OPINION OF THE COURT
McKee, Chief Judge
Joseph Watson, an inmate at the State Correctional Institution at Somerset, Pennsylvania, filed this action under 42 U.S.C. § 1983 alleging prison officials violated his First Amendment rights by improperly issuing a misconduct against him, and by retaliating against him for the exercise of his First Amendment rights.
The District Court dismissed Watson’s suit against some of the officials with prejudice, and granted summary judgment in favor of the remaining officials on Watson’s surviving retaliation claims. Watson then filed this appeal. For the following reasons, we will affirm in part, reverse in part, and remand for further proceedings on Watson’s retaliation claim against Officer Coutts.
I.
Watson’s claims arise from the alleged mishandling and confiscation of his radio during a routine cell search conducted by Officer Kline at 8:30 A.M. on December 6, 2011. According to Watson, while inspecting Watson’s radio, Kline pulled the antenna out so far that it broke off. Kline claims a portion of the antenna was already broken and had been secured with tape. Watson asserted that the antenna was merely loose and not broken, but agreed that it was secured with tape when Kline examined it. Watson accused Kline of breaking the radio and insisted that Kline have it repaired. According to Watson, he consented when Kline explained that a broken radio is considered contraband that had to be confiscated.[1] Watson accompanied Kline to the officer’s desk on the cellblock to fill out the paperwork required when an inmate’s property is confiscated.
In completing that paperwork, Kline noted that the antenna was already broken when he found it. Watson claimed Kline actually broke the radio and was not *421 pleased that Kline did not take responsibility. Watson asked Kline to prepare an incident report documenting that Kline broke the antenna. Kline refused. Watson then asked Captain Simosko for a grievance form, but Simosko refused to give him one.
Later that day Watson was summoned to the prison security office where Officer Coutts purportedly asked Watson about the broken radio. During this exchange, Coutts purportedly stated that Watson had given Simosko and Kline a “hard time” by asking for a grievance form and insisting that the radio be repaired rather than just dropping the matter. Coutts allegedly told Watson that, as a result, he was going to give Watson a misconduct. According to Watson, Coutts said that he (Watson) had not handled the situation “the polite way” because he had insisted on filing a grievance.
Watson did eventually fill out a grievance form that he obtained from another prisoner. However, before Watson could file his grievance, he was summoned to pick up a misconduct notice that had been prepared by Coutts and approved and signed by Security Captain Snyder. The misconduct notice cited Watson with a Class I misconduct and stated that the radio had been confiscated as contraband. The misconduct form indicated that it was received at 2:23 P.M., nearly six hours after the search of Watson’s cell. After receiving the misconduct, Watson filed his grievance against Kline. Watson did not file a grievance against anyone else who had been involved with the confiscation of his radio or the misconduct that was filed against him.
Watson was ultimately found guilty of the charged misconduct at a hearing conducted by Hearing Officer Dupont. However, Dupont reduced the level of the misconduct from Class I to Class II. The penálty that was imposed was confiscation of Watson’s radio. Watson’s appeal of the imposition of a Class II misconduct was denied by the Department of Corrections’ Program Review Committee. The Committee concluded that Dupont’s decision was supported by the evidence at the hearing. Watson appealed that decision to the prison superintendent who sustained the prior decisions.
Thereafter, Watson filed the present lawsuit. The defendants were Gerald Ro-zum, Daniel Gehlman, Leo Glass, Melissa Hainsworth, Coutts, Dupont, Synder, and Simosko. The District Court dismissed all of Watson’s claims with prejudice, with the exception of Watson’s retaliation claims against Dupont, Simosko, Snyder and Coutts.
Thereafter, the District Court adopted the Magistrate Judge’s recommendations and granted summary judgment in favor of each of the remaining defendants and against Watson. The District Court agreed that summary judgment was appropriate even if the record established that Watson had made out a prima facie case of retaliation, because prison officials would have issued the misconduct regardless pf Watson’s protected activity (the “same decision” defense). This appeal followed.
II.
We exercise plenary review over a District Court’s grant of summary judgment.[2] Summary judgment is appropriate if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law.[3] The judge’s function at the summary judgment stage is solely to de *422 termine whether there is a genuine issue of material fact for trial.[4]
Watson alleged due process violations, an unconstitutional search and seizure under the Fourth Amendment and Fifth Amendment, prison policy violations, state law violations and retaliation for engaging in conduct, protected by the First Amendment. As noted, all of Watson’s initial claims were dismissed with prejudice, except for his claim for relief based on the alleged retaliation. Watson now appeals the District Court’s grant of summary judgment on the retaliation claims. Therefore, we need only decide if Watson’s retaliation claims survive summary judgment.
Our analysis is guided by our decision in Rauser v. Horn.[5] In order to establish illegal retaliation for engaging in protected conduct, Watson must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials;[6] and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.[7] Because motivation is almost never subject to proof by direct evidence, Watson must rely on circumstantial evidence to prove a retaliatory motive. He can satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link.[8]
However, even if Watson establishes a prima facie case, prison officials may still prevail if they establish that “they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.”[9] This is often referred to as the “same decision defense.” For purposes of this appeal, the named prison officials assume that Watson engaged in constitutionally protected conduct and that he suffered an adverse consequence. They argue that Watson cannot establish the required causal nexus between the two and that, even if he could, the same decision defense applies. However, since we conclude that the evidence was sufficient to survive summary judgment as to Coutts, we will explain why we believe Watson satisfied the first two prongs of his prima facie case rather than merely relying on the defendants’ assumption that he has.

A. Whether Watson’s Conduct was Constitutionally Protected

Watson claims that he engaged in constitutionally protected activity when he filed a grievance against a corrections officer, and that defendants illegally retaliated by citing him for misconduct. In Mitchell v. Horn, we explained that filing such a grievance does “implieate[] conduct protected by the First Amendment.”[10] Here, the allegedly retaliatory conduct occurred before he filed his grievance. However, we do not believe that chronology necessarily defeats Watson’s retaliation claim because he informed prison officials of his intent to file a grievance and requested an appropriate form from Simosko before any miscon *423 duct was filed against him. For purposes of Watson’s retaliation claim, we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other. Accordingly, the record is sufficient to establish the first prong of Watson’s prima fade case of retaliation.

B. Whether Watson Suffered an Adverse Action at the Hands of Prison Officials

An adverse consequence “need not be great in order to be actionable!;]” rather, it need Only be “more than de minimis.”[11] Watson clearly suffered an adverse consequence when Coutts charged him with a Class I misconduct. Class I misconducts subject inmates to a range of sanctions, including a disadvantageous change in housing assignment, placement in restricted housing or restrictive confinement for up to 90 days, or a detrimental change in program level.[12] They may also result in loss of the ability to participate in prerelease programs, including work release and temporary home furloughs for nine months.[13] These are clearly more than de minimis consequences. Moreover, even though his Class I misconduct was reduced to a Class II misconduct at his hearing, Watson lost his radio as a result and the Class II misconduct became part of his prison record. This is substantially more than a de minimis consequence for someone confined in a prison cell.

C. Whether Watson’s Constitutionally Protected Conduct was a Substantial or Motivating Factor in the Decision to Discipline Him

We now arrive at the main contention in this dispute — whether the deprivation that Watson suffered was the result of his protected activity as required to establish the third prong of his prima facie case for illegal retaliation. We agree with the District Court’s conclusion that Watson failed on this prong and that summary judgment was appropriate for Dupont, Simosko and Snyder.
There is no evidence of improper motivation or involvement in the issuance of the misconduct on the part of Simosko. As for Snyder and Dupont, Watson attempted to connect the confiscation of his radio to lawsuits he previously filed against those two. According to Watson, Snyder approved the misconduct, and Dupont upheld it, in retaliation for a lawsuit that he filed against Snyder in 2008 and for a separate lawsuit against Dupont in 2009. Watson has conceded, however, that Dupont did not retaliate against him regarding the grievance, and that his claim was based solely on a prior lawsuit against Dupont. Indeed, the timing between the prior suit against Dupont in 2009 and the confiscation of Watson’s radio two years later is just too remote to suggest a retaliatory motive here. Likewise, the timing for Snyder is even weaker, as he would have approved the misconduct charge despite the previous lawsuit Watson filed in 2008. Nothing here suggests that those lawsuits had any connection whatsoever to the fact that Watson’s radio was deemed to be contraband.
However, Coutts is in a different situation. As we shall explain, the record supports conflicting inferences regarding Coutts’ motive in issuing Watson’s misconduct. Accordingly, disputed issues of fact surround the retaliation claim against Coutts. Summary judgment in favor of him was not appropriate.
*424 As we noted earlier, Watson can establish the third element of a prima, facie case of retaliation with evidence of: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.[14] However, “the timing of the alleged retaliatory action must be ‘unusually suggestive’ of retaliatory motive before a causal link will be inferred.”[15] Moreover, causation, like any other fact, can be established from the evidence gleaned from the record as a whole.[16] “[W]here the temporal proximity is not so close as to be ‘unduly suggestive,’ ” the appropriate test is “timing plus other evidence.”[17] Here, Coutts’ statements to Watson satisfy any requirement for “other evidence.”
In reviewing a grant of summary judgment, we “view the evidence and all justifiable inferences to be drawn therefrom in the light most favorable to the non-moving party.”[18] We must determine if the record, viewed in this light, contains a genuine dispute of material fact as to whether Watson was punished for engaging in protected conduct apart from the legitimate misconduct Coutts charged him with.
Watson argues that the proximity between his constitutionally protected action and the challenged adverse action is sufficient to establish causation.[19] According to Watson, only a few hours elapsed between his request for a grievance form and the issuance of the misconduct. The confiscated items receipt was filled out at 8:40 A.M., soon after Kline searched Watson’s cell and discovered Watson’s radio. However, the misconduct was not issued until. 2:23 P.M. that same day; nearly six hours after his radio was seized and only after Watson had declared that he was going to file a grievance.
Before Coutts issued the misconduct, he purportedly told Watson that he was being written up for giving Kline and Simosko a “hard time” and for not being “polite.” Here Coutts never elaborated on what he meant by saying Watson gave the officers a “hard time” or was not being “polite,” and inferences must be drawn in favor of Watson, as the nonmoving party. Accordingly, Watson has established a prima facie case against Coutts, because there is a genuine issue of material fact as to whether Watson’s decision to file a grievance motivated Coutts to charge him with misconduct. Since he has established a prima facie case, we then look to whether Coutts satisfies the same decision defense.
*425 ill.
We begin our discussion of whether Coutts was entitled to judgment as a matter of law with our decision in Carter v. McGrady.[20] There, an inmate claimed that he was given a misconduct because .prison officials resented his functioning as a jailhouse lawyer. In rejecting that claim, we ■noted that most prisoners’ retaliation claims will fail if the misconduct charges are supported by the evidence. We explained that “[ejven if prison officials were motivated by animus to jailhouse lawyers, Carter’s offenses, such as receiving stolen property, were so clear and overt that we cannot say that the disciplinary action taken against Carter was retaliatory.”[21] Accordingly, we “[could] not say that the prison officials’ decision to discipline Carter for his violations of prison policy was not within the ‘broad discretion’ that we must afford them.”[22] In reaching that conclusion, we emphasized the “great deference” that the decisions of prison administrators are entitled to in the context of disciplinary proceedings.[23]
Not all Circuit Courts of Appeals agree on this standard. The Courts of Appeals for the Second, Eighth and Eleventh Circuits have formulated a same decision defense based on some evidence of prisoner misconduct,[24] which originates from the Supreme Court decision in Superintendent, Mass. Corr. Inst., Walpole v. Hill,[25] There, the Court held that prison disciplinary convictions may be upheld if they are supported by “some evidence” of misconduct. The Courts of Appeals for the Fifth and Seventh Circuits, however, have found that some evidence is not an absolute bar and permit claims by prisoners to go to trial if the prisoner can offer evidence that contradicts prison officials’ explanations for their action against the inmate.[26] How *426 ever, in Rauser, we held that the defendant must establish that the same decision would have been made even absent any retaliatory motive.[27]
As noted, in Carter we explained that we evaluate the “the quantum of evidence” of the misconduct to determine whether the prison officials’ decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them.[28] Given the force of the evidence that Carter was guilty of receiving stolen property, we held that the there was no genuine issue of material fact that his misconduct citation was reasonably related to legitimate penological interests, and that Carter would have been disciplined notwithstanding his jailhouse lawyering.[29]
Watson’s situation is different. Watson’s broken radio was not so “clear and overt” a violation that we can conclude that he would have been written up if he had not also given prison officials “a hard time.” The radio had allegedly been in the same condition for more than a year. Moreover, there is evidence that other inmates had radios with loose or broken antennas, but those items were not' confiscated and the inmates did not receive a misconduct. Finally, Kline did not charge Watson with a misconduct when he confiscated the radio. Accordingly, a reasonable fact finder could conclude that the misconduct was issued in retaliation for Watson’s statement that he was going to file a grievance, and not in furtherance of legitimate penological goals.
We note that this is not the first time that we have held that a plaintiff can make out a retaliation claim even though the charge against him may have been factually supported.[30] In Hill v. City of Scranton, four police officers survived summary judgment on their claims that the city had retaliated against them by selectively enforcing an ordinance to punish them for a lawsuit that they had brought even though it was clear that three officers violated the relevant ordinance.[31] We reasoned that it was not necessary for the officers to allege or prove compliance with the ordinance to prevail on their First Amendment claim.[32]
IV.
For the reasons set forth above, we will affirm the District Court’s grant of summary judgment on Watson’s retaliatory claims against Dupont, Simosko and Snyder, but reverse the grant of summary judgment in favor of Coutts and remand for further proceedings on that claim.

. Department of Corrections Policy, DC-ADM 815, Section 3.C.I. A broken radio, altered from its original state, is considered contraband pursuant to DOC rules and regulations.

. Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003).

. Carter v. McGrady, 292 F.3d 152, 157 n.2 (3d Cir. 2002).

. Id.

. 241 F.3d 330 (3d Cir. 2001).

. An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.” See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotation marks omitted).

. Rauser, 241 F.3d at 333-34.

. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

. Rauser, 241 F.3d at 334.

. 318 F.3d 523, 530 (3d Cir. 2003).

. McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotations omitted). [4]

. 37 Pa. Code'§ 93.10.

. Id. § 94.3(a)(4).

. Lauren W., 480 F.3d at 267; Rauser, 241 F.3d at 334 (concluding that "Rauser has demonstrated.a suggestive temporal proximity between his insistence on his First Amendment rights and his [prison] transfer and wage reduction.”).

. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotation marks omitted) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000) (concluding "that the District Court employed too restrictive a view of the type of evidence that can be considered probative of the causal link. It is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred.”).

. Id. at 280.

. Rauser, 241 F.3d at 334.

. Id. (concluding that "Rauser has demonstrated a suggestive temporal proximity between his insistence on his First Amendment rights and his transfer and wage reduction.") (internal citation omitted).

. 292 F.3d 152 (3d Cir. 2002).

. Carter, 292 F.3d at 159.

. Id. (citing Thornburgh v. Abbott, 490 U.S. 401, 403, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (quotations in original)).

. Id. at 158.

. See, e.g., Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (“The burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no dispute that the plaintiff ‘committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.' ”) (citation omitted); Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir.2008) (reviewing allegations of false disciplinary reports and concluding "claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule.”)(citation omitted); Orebaugh v. Caspari, 910 F.2d 526, 528 (8th Cir. 1990) (noting that "[N]o claim can be stated when the alleged retaliation arose from discipline imparted, for acts that a prisoner was not entitled to perform.”); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (holding if there is "some evidence” that a prisoner committed the alleged misconduct, that “essentially checkmates his retaliation claim.”); O'Bryant v. Finch, 637 F.3d 1207, 1217 (11th Cir. 2011)(noting that “if the [prison] official can show that he would have taken the disciplinary action in the absence of the prisoner's protected conduct, he cannot be held liable.”).

. 472 U.S. 445, 447, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (concluding “that where good time credits constitute a protected liberty interest, a decision to revoke such credits must be supported by some evidence.”).

. Woods v. Smith, 60 F.3d 1161, 1164-65 (5th Cir. 1995) (noting that a retaliation claim focuses not on the merits of the disciplinary proceeding but on the retaliatory "interference, asking only whether there has been an obstruction of the exercise of a constitutional right.”). The “concern is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary” conviction. Id.; Greene v. Doruff, 660 F.3d 975, 977-80 (7th Cir.2011) (adopting but-for causation with burden-shifting mechanism, and noting that once prisoner shows that the vio *426 lation was a motivating factor, “the burden shifts to the defendant to show that the harm would have occurred anyway.”). Although a state appellate court decision, the Indiana Court of Appeals provides an example of a more flexible approach. See Medley v. Lemmon, 994 N.E.2d 1177, 1190 (Ind. Ct. App. 2013)(noting that it is not clear whether a "retaliation claim should automatically be defeated in such a situation, especially where the decision of what punishment to impose on a prisoner for a rules infraction is entirely discretionary.").

.Rauser, 241 F.3d at 334 n.2 (citing Goff v. Burton, 7 F.3d 734, 737 (8th Cir.1993) as an example of a Circuit that takes an opposing approach to ours).

. Carter, 292 F.3d at 159.

. Id.

. 411 F.3d 118, 130 (3d. Cir. 2005).

. Id.

. Id. (noting that "The officers certainly do not need to allege or prove compliance with the ordinance to prevail on their First Amendment claim. Discriminatory enforcement of a statute or ordinance is not justified simply because the enforcement is otherwise valid.”).