**ALD-011**                                                  **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2637
_____

CARL WHITEHEAD,
                                      Appellant

v.

JOHN E. WETZEL, Secretary, Commonwealth of Pennsylvania, Department of
Corrections; DORINA VARNER; JAMES C. BARNACLE; DENISE THOMAS;
BARRY GRUBB; GERALD L. ROZUM; DANIEL GEHLMANN;
MELISSA HAINSWORTH; ALLEN G. JOSEPH; CAPT BAKOS; LT BARBARICH;
C/O COPHENOUR; C/O BOWMAN; C/O SLEDGE; LT CLIPPENGER;
DIANE KOLESOR; JOSEPH DUPONT; LT CINKO; C/O EHRHART;
JOSEPH BIANCONI; ROBIN M. LEWIS; DR. RASHIDA MAHMUD;
DARLENE CHANEY

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 3-14-cv-00051)
District Judge:  Honorable Kim R. Gibson

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
October 12, 2017

Before: MCKEE, VANASKIE and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 19, 2017)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Carl Whitehead, a Pennsylvania state prisoner proceeding in forma pauperis, appeals from the District Court's orders granting in part the defendants' motions to dismiss and granting the defendants' motions for summary judgment. For the reasons discussed below, we will summarily affirm.

I.

Because we write primarily for the parties, who are already familiar with this case, we include only those facts necessary to reach our conclusion.

Whitehead has suffered from chronic shoulder pain since at least January 2011, when a prison doctor at a correctional institution in Virginia granted him permanent lower bunk status. Whitehead was transferred to the State Correctional Institution at Somerset, Pennsylvania in 2012. Upon arrival, the evaluating doctor at SCI-Somerset determined that Whitehead did not have any medical restrictions or limitations, including the need for a lower bunk. Thereafter, Whitehead regularly complained of shoulder pain, and was granted lower bunk status for various periods of time.

Aside from the periodic changes involving his lower bunk status, Whitehead received extensive medical treatment from the staff at SCI-Somerset, including Defendant Dr. Mahmud. The medical records show that the medical staff examined Whitehead's shoulder pain dozens of times and provided him regular treatment, including numerous x-rays, shoulder injections, physical therapy, and pain medications.

2

Notwithstanding the extensive monitoring and treatment of his shoulder pain, Whitehead alleged in his amended complaint that the treatment was not effective and violated his Eighth Amendment rights for two reasons. First, Whitehead alleged that he was improperly denied a necessary off-site MRI based on budget concerns, and second, he alleged that prison officials were deliberately indifferent to his medical needs when they denied his lower bunk status.

Whitehead also alleged that the correctional institution defendants retaliated against him based on a series of events stemming from his initial denial of lower bunk status. In January 2013, when Whitehead was not on a lower bunk restriction, he was found guilty on a misconduct for refusing orders to get in the top bunk. Whitehead alleged that the misconduct was issued in retaliation for a request slip that Whitehead had filed a few days earlier questioning why he was removed from the block workers list.

After the misconduct, Whitehead was taken to the RHU, where he started a hunger strike. Once Whitehead had refused nine straight meals, he was transferred to the psychiatric observation cell, where he was charged a $5.00-per-day medical co-pay from his inmate account. Whitehead alleged that the $5.00 co-pays were retaliatory and forced him to stop his hunger strike. Whitehead also alleged that he was not given notice that psychiatric observation during a hunger strikes is subject to a $5.00 co-pay.

After Whitehead was removed from the RHU, he filed grievances alleging that he was deprived of some property that had been inventoried when he entered the RHU. On administrative appeal, it was determined that Whitehead was over the allowable amount

3

of property, that certain non-returnable food items had to be destroyed, and that Whitehead was initially given the opportunity to choose which items would be discarded to reach the allowable amount – until he became argumentative and had to be removed from the area. Whitehead alleged in his amended complaint that, in the course of the grievance process, certain receipts inventorying his property were forged.

While these grievances were being appealed and reviewed, Whitehead mailed letters with attached grievances to the Pennsylvania State Police, complaining that prison officials confiscated and destroyed a substantial amount of his property. Whitehead was disciplined after it was determined that Whitehead had forged the signatures of prison staff on two of the grievances and completely fabricated another grievance sent to the state police. Whitehead disputed these findings, but they were upheld on administrative appeal. Whitehead alleged in his amended complaint that the discipline he received was imposed in retaliation for his grievances.

Whitehead's amended complaint brought claims against the correctional defendants and Dr. Mahmud under 42 U.S.C. § 1983 for violations of his rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution, as well as violations of 42 U.S.C. §§ 1985(3) and 1986.

The District Court adopted the Report and Recommendation of the Magistrate Judge, and dismissed most of Whitehead's claims, but allowed four to proceed: (1) Eighth Amendment claim for denial of an off-site MRI against defendants Thomas and Mahmud; (2) Eighth Amendment claim for denial of lower bunk status against

4

defendants Thomas, Bianconi, Ehrhart, and Cinko; (3) First Amendment retaliation claim for denial of lower bunk status against defendants Bianconi, Ehrhart, and Cinko; and (4) First Amendment retaliation claim against defendants Bakos and Dupont based on the discipline Whitehead received for mailing forged grievances to the state police.

After discovery concluded, the remaining defendants filed motions for summary judgment on all remaining claims. Whitehead did not directly respond to these motions, but instead filed his own motions for summary judgment. Those motions did not dispute the defendants' statement of material facts, despite a warning from the District Court that the facts would be deemed admitted if not controverted.

The District Court adopted the Report and Recommendation of the Magistrate Judge and granted the remaining defendants' motions for summary judgment on all remaining counts. Whitehead then filed a timely notice of appeal to this Court.

II.

We have jurisdiction under 28 U.S.C. § 1291. "We review district court decisions regarding both summary judgment and dismissal for failure to state a claim under the same de novo standard of review." Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine

5

dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016). We may summarily affirm if the appeal presents no substantial question. See 3d Cir. LAR 27.4; I.O.P. 10.6.

III.

The appeal presents no substantial question regarding the District Court's order granting in part the defendants' motions to dismiss.

The District Court properly dismissed all of the § 1983 claims against Defendants Barbarich, Barnacle, Gehlmann, Grubb, Hainsworth, Joseph, Lewis, Rozum, Varner, and Wetzel because the amended complaint contains no well-pled factual allegations of these individuals' personal involvement in the alleged wrongdoing. See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) (to establish liability under § 1983, each individual defendant must have personal involvement in the alleged wrongdoing).

The District Court also dismissed Whitehead's claims stemming from the deduction of $5.00 medical co-pays for his psychiatric observation during a hunger strike. The District Court found that Whitehead's allegations failed to state an Eighth Amendment claim for deliberate indifference to serious medical need, see Estelle v. Gamble, 429 U.S. 97, 106 (1976), a First Amendment claim for retaliation, see Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001), or a Fourteenth Amendment Due Process claim, see Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). As discussed below, we agree.

6

To state a cognizable medical needs claim under the Eighth Amendment, Whitehead must allege that a defendant: (1) knew of and disregarded an excessive risk to inmate health or safety; (2) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and (3) actually drew the inference. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Whitehead's allegations regarding the deduction of co-pays for his psychiatric observation during a hunger strike show that his medical needs were being addressed, not disregarded, and thus fail to state an Eighth Amendment claim. See id.

In order to state a First Amendment claim for retaliation, Whitehead must allege: (1) that he was engaged in constitutionally protected conduct; (2) that prison officials caused him to suffer an adverse action; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the officials' decision to discipline him. See Rauser, 241 F.3d at 333. Deducting $5.00 medical co-pays from Whitehead's account was not an adverse action, and therefore fails to state a First Amendment retaliation claim. The amended complaint shows that the co-pays were deducted in exchange for the benefit of his healthcare, and therefore, on the facts plead by Whitehead, the co-pays cannot serve as the basis of a First Amendment retaliation claim. See id.

To establish a Fourteenth Amendment claim under the Due Process Clause, a plaintiff must show that he had a protected liberty or property interest of which he has been deprived, and that the process afforded him did not comport with constitutional requirements. See Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). Even "an

7

unauthorized intentional deprivation" of an inmate's property by prison officials "does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). We have consistently held that the availability of a prison's grievance procedure is a meaningful postdeprivation remedy. See, e.g., Tillman v. Lebanon Cty. Corr. Fac., 221 F.3d 410, 422 (3d Cir. 2000). Whitehead has failed to state a Due Process claim because the amended complaint shows that he had access to, and took advantage of, the prison grievance system after the co-pays were deducted from his prison account.[1]

The District Court also properly dismissed Whitehead's generalized claim that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated. The Equal Protection Clause requires that all people similarly situated be treated alike. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). There are no allegations in Whitehead's amended complaint that he was treated differently than any other similarly situated inmates. Nor are there any allegations that any of the defendants' actions were motivated by a discriminatory purpose or had a discriminatory effect.

---

[1] The amended complaint does not set forth a claim for a procedural due process violation relating to Whitehead's misconduct hearings, and we agree with the District Court's analysis that – even assuming Whitehead had properly raised that claim – it would fail because Whitehead failed to identify a protected liberty interest. See, e.g., Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (15 months in administrative custody did not implicate protected liberty interest).

8

"Where there is no discrimination, there is no equal protection violation." Tillman, 221 F.3d at 424.

Finally, the District Court properly dismissed Whitehead's conclusory allegations of a conspiracy to violate his constitutional rights under 42 U.S.C. §§ 1985(3) and 1986. To establish a claim under § 1985(3), a plaintiff must show "(1) a conspiracy; (2) motivated by a racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property, or the deprivation of any right." Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997). Whitehead failed to sufficiently allege any of these elements, and at best, Whitehead's amended complaint contains conclusory statements – not entitled to the assumption of truth, see Iqbal, 556 U.S. at 678 – of a conspiracy. Even if that element were met, Whitehead has failed to allege that any of the defendants were motivated by a racial or class-based discriminatory animus designed to deprive Whitehead of equal protection of the laws. As such, Whitehead's claims under § 1985(3) fail as a matter of law. Likewise, Whitehead's claims under § 1986 fail. A § 1986 claim requires an underlying violation of § 1985. Thus, "if the claimant does not set forth a cause of action under the latter, [his] claim under the former must also fail." Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980).

IV.

9

Nor does the appeal present any substantial question regarding the District Court's order granting summary judgment to the remaining defendants on the remaining claims.

The District Court properly granted summary judgment in favor of Dr. Mahmud and correctional defendants Bianconi, Ehrhart, and Cinko because Whitehead failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). See 42 U.S.C. § 1997e(a). The defendants provided extensive documentary evidence that Whitehead had not done so, and we agree with the District Court that Whitehead's conclusory assertion in his motion for summary judgment that he "exhausted all available remedies prior to filing the instant civil action" was not sufficient to create a genuine dispute of material fact.

The District Court properly granted summary judgment in favor of defendant Thomas on the remaining Eighth Amendment claims, based on the denial of an MRI and denial of lower bunk status to Whitehead, because Thomas is a non-medical professional and appropriately relied on prison physicians. See Pearson v. Prison Health Svc., 850 F.3d 526, 543 (3d Cir. 2017). A "'non-medical prison official' cannot 'be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference' when the 'prisoner is under the care of medical experts' and the official does not have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" Id. (citing Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)). The undisputed facts, including an affidavit from defendant Thomas, show that Thomas was employed in a non-medical administrative position and appropriately relied on medical

10

staff and records in denying Whitehead an MRI and lower bunk status. Thus, Thomas was entitled to summary judgment.

Finally, the District Court properly entered summary judgment in favor of defendants Dupont and Bakos on Whitehead's First Amendment retaliation claim based on the discipline Whitehead received for mailing forged grievances to the state police. In general, "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence" because courts afford prison officials "great deference" in the context of prison disciplinary proceedings. Watson v. Rozum, 834 F.3d 417, 425 (3d Cir. 2016). To determine whether the prison officials' discipline of the prisoner was within the bounds of their broad discretion, courts evaluate the "quantum of evidence" of the underlying misconduct charges. Id. at 426. The undisputed facts here show that the quantum of the evidence supported the misconduct charges against Whitehead. Thus, the District Court properly entered summary judgment in favor of defendants Dupont and Bakos.

As this appeal does not present a substantial question, we will summarily affirm the judgment of the District Court. See 3d Cir. LAR 27.4; I.O.P. 10.6