**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1056
_____

MICHAEL A. ROMERO,
                              Appellant

v.

ABU AHSAN, in their individual and official capacities;
ROBIN GEHRMANN, in their individual and official capacities

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:13-cv-07695)
District Judge:  Honorable Freda L. Wolfson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 24, 2020
Before:  AMBRO, GREENAWAY, Jr., and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 15, 2020)
_____

OPINION[*]
_____

PER CURIAM

Michael A. Romero, who is proceeding pro se and in forma pauperis, appeals from

an order of the United States District Court for the District of New Jersey granting the

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

defendant's motion for summary judgment in this civil rights case. For the reasons set forth below, we will affirm the District Court's judgment in part, vacate in part, and remand for further proceedings.

I.

On December 28, 2011, Romero, a state prisoner, suffered an injury to his right knee while playing basketball. Immediately after the injury occurred, Dr. Abu Ahsan, the medical director at the New Jersey State Prison, prescribed Tylenol with codeine and crutches. Dr. Ahsan also admitted Romero to the infirmary for an X-ray, the results of which were normal. On January 3, 2012, Dr. Ahsan ordered that Romero continue to receive infirmary care, that he be provided with a knee immobilizer, and that he perform range-of-motion exercises and engage in weight bearing as tolerated. Dr. Ahsan also ordered an expedited MRI test. Dr. Ahsan saw Romero again on January 4 and 6; on both occasions, Romero noted that his knee was better but that he still could not put weight on it. When Romero complained on January 9 that he was experiencing pain at night, Dr. Ahsan prescribed another two-week course of Tylenol with codeine, two times per day. Following the MRI test, and after consulting with an orthopedic surgeon, Dr. Ahsan proposed a treatment plan on January 12, 2012, that included a knee immobilizer for two weeks, to be followed by a hinged knee brace for three months, and then eventual surgery to repair the ACL. Romero was fitted with the knee immobilizer on January 18.

Next, Romero had an orthopedic consultation with Dr. Ahmar Shakir, who recommended surgery and stated that Romero should be treated at a tertiary care center.

2

In mid-February, Romero was examined by Dr. Robin Gehrmann, who "recommended a hinged knee brace, range-of-motion exercises, and six weeks of physical therapy." (SA 38.) "Romero 'understood that he needed to strengthen his right knee before undergoing surgery' and 'did not object to the proposed plan of treatment.'" (*Id.* (quoting ECF No. 58-2 ¶ 30).) On February 15, Dr. Ahsan ordered a hinged knee brace. While waiting for the hinged knee brace, Romero continued to take Tylenol with codeine. He also began physical therapy on March 3. Dr. Gehrmann examined Romero again on March 27. At that appointment, Romero reported that he was not in as much pain, and Dr. Gehrmann noted that Romero's range of motion had improved from the previous visit. In notes from Romero's medical visits during the period of February 15 to June 12, health care providers stated that Romero had not yet obtained a hinged knee brace. Romero received the hinged knee brace on June 12, 2012. On June 26, Dr. Gehrmann, noted "'drastic' improvement" in Romero's range of motion. (SA 39.)

II.

In December 2013, Romero filed a pro se complaint under 42 U.S.C. § 1983 against Dr. Ahsan.[1] In the complaint, Romero alleged that Dr. Ahsan deliberately delayed distribution of the hinged knee brace and denied knee surgery on account of grievances that Romero had filed against him. Romero claimed that Dr. Ahsan's conduct constituted cruel and unusual punishment under the Eighth Amendment and retaliation

---

[1] The complaint also named Dr. Gehrmann, but the parties eventually stipulated to the dismissal of Dr. Gehrmann from the case.

under the First Amendment.  He sought, among other things, a declaration that his constitutional rights were violated, an order enjoining further retaliation, and unspecified compensatory and punitive damages.

The District Court granted Romero's motion for appointment of counsel.  After the completion of discovery, Dr. Ahsan filed a motion for summary judgment, arguing that Romero failed to exhaust administrative remedies, that the evidence did not demonstrate either a serious medical condition or deliberate indifference to a serious medical need, and that Romero failed to demonstrate that he had engaged in constitutionally protected conduct or that Dr. Ahsan took any retaliatory act.

Although the District Court concluded that Romero's claims were not barred by a failure to exhaust,[2] it ruled in favor of Dr. Ahsan on the merits of Romero's claims.  In particular, with respect to the surgery-related portion of the inadequate-treatment claim, the District Court held that the evidence did not support a finding that the non-operative medical treatment Romero received was inadequate.  Furthermore, the District Court concluded that although there was a factual question regarding whether the delay in providing the hinged knee brace constituted inadequate treatment, there was no evidence demonstrating that the delay was intentional.  The District Court also rejected the retaliation claims.  According to the District Court, the evidence did not support a link between the delay in providing the hinged brace and the grievances filed against Dr.

---

[2] Dr. Ahsan does not seek to defend the District Court's judgment on the ground that Romero failed to exhaust his administrative remedies.

4

Ahsan.  Finally, because the non-surgical treatment was consistent with the recommendations of the treating orthopedists, the District Court held that no reasonable factfinder could conclude that a person of ordinary firmness in Romero's position would be deterred from exercising the First Amendment right to file grievances.  Romero filed a pro se notice of appeal.

III.

We have jurisdiction under 28 U.S.C. § 1291 and exercise de novo review over the District Court's order granting summary judgment.  See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013).  Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Kaucher v. Cty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to "come forward with specific facts" showing that there is a genuine issue for trial.  See Santini v. Fuentes, 795 F.3d 410, 416 (3d Cir. 2015) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).  We may affirm on any basis supported by the record.  See Fairview Twp. v. EPA, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

IV.

An incarcerated plaintiff asserting a § 1983 claim for inadequate medical care under the Eighth Amendment must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need. See Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017). As the District Court properly concluded, it is clear that Romero's injury – involving a torn anterior cruciate ligament (ACL), meniscal tear, and other knee damage – constituted a serious medical condition that was "diagnosed by a physician as requiring treatment." See Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Dr. Ahsan himself was one of several physicians who diagnosed Romero's injury as requiring treatment.

Accordingly, our inquiry focuses on whether it was error to determine that, as a matter of law, the record cannot support a finding that Dr. Ahsan acted with deliberate indifference to Romero's injury. Deliberate indifference can be shown by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Allegations of medical malpractice are not sufficient to establish a constitutional violation. White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990). Furthermore, "mere disagreement as to the proper medical treatment" does not support a claim of an Eighth Amendment violation. Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 346.

We will first address the Eighth Amendment claim related to the almost four-month-long delay in providing the hinged knee brace. The District Court concluded that the evidence did leave "some question" as to the adequacy of care concerning the delay.

6

In particular, the District Court stated that the evidence did not explain why there was a lengthy delay in obtaining the hinged knee brace. Nevertheless, the District Court rejected the claim because Romero's "brief in opposition [did] not respond as to the alleged delay in receiving the knee brace at all, much less point to evidence showing that such delay was intentional, rather than merely inadvertent."

We have held that "extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim." Pearson, 850 F.3d at 537. Instead, "[a]ll that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." Id. That standard has been met here. Romero alleged in his complaint that "defendants deliberate[ly] delayed in providing a hinged knee brace to prolong plaintiff's pain and suffering … because plaintiff filed grievances against them." See Compl. at ¶ 29. Further, Romero submitted a copy of a grievance dated May 20, 2012, which alleged that the hinged knee brace was being "maliciously delay[ed] . . . to keep [him] in the wheelchair and prolong [his] pain as punishment because [he] filed remedy forms." He also submitted a copy of a letter, dated February 17, 2012, to Ms. Kathy Trillo, Manager of the NJSP Medical Department, in which he noted that he had yet to be provided with the recommended hinged knee brace "because [he] filed remedy forms." Moreover, according to Romero, Dr. Ahsan told him on January 13, 2012, that "patients that file remedy forms do not receive surgeries in my prison." Approximately one month later, shortly after Dr. Gehrmann recommended non-operative treatment, Dr. Ahsan stated to

7

Romero, "I told you, complaining equals no surgery, you just learned a valuable lesson."

Although those statements did not specifically reference the hinged knee brace, they suggest that Romero's grievances, not his medical needs, influenced Dr. Ahsan's decisions. Without the hinged knee brace, Romero asserted that he was confined to a wheelchair for the first six months following his injury. After obtaining the brace, Romero's knee significantly improved. We conclude that this summary-judgment evidence, when viewed in the light most favorable to Romero, indicates that there is a genuine issue of material fact concerning whether the delay in obtaining the hinged knee brace was motivated by non-medical factors.

The District Court did, however, properly grant summary judgment on Romero's surgery-related inadequate medical care claim. A prisoner's medical treatment is presumed to be proper, "absent evidence that it violates professional standards of care." Pearson, 850 F.3d at 535 (citation omitted). To overcome that presumption, there must be evidence showing that the care violated professional norms. Id. at 536. Here, although both Dr. Ahsan and Dr. Shaker initially proposed surgery, Dr. Gehrmann, indicated that non-operative treatment was preferable. Dr. Gehrmann's conclusion was based in part on the "time frame since the injury" and the possibility that, without "specific rehab measures" that were unavailable in prison, Romero "could actually end up with worse outcomes if he had the surgery."[3] Romero argues that Dr. Ahsan should

---

[3] In May 2014, over four months after Romero commenced this action, Dr. Ahsan requested that Romero receive another orthopedic consultation because Romero had

8

have ordered the surgery. But mere disagreement with the course of treatment does not create an actionable constitutional violation. See Monmouth Cty. Corr. Institutional Inmates, 834 F.2d at 346. And no actionable claim arises "when a *doctor* disagrees with the professional judgment of another doctor," because "[t]here may … be several acceptable ways to treat an illness." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (emphasis in original). Because Romero's treatment reflects professional medical judgment that surgery was not appropriate, the District Court correctly entered summary judgment in favor of Dr. Ahsan on the Eighth Amendment claims.

V.

We conclude, moreover, that the District Court properly entered summary judgment on Romero's First Amendment retaliation claim as to the denial of surgery. "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). Assuming that Romero made the requisite initial showing as to these factors,[4] we nevertheless conclude that Dr. Ahsan has demonstrated that he

---

reinjured his knee. An orthopedist recommended that Romero be scheduled for knee surgery, which was performed in October 2014.

[4] Given this assumption, we do not address the District Court's conclusion that,

9

would have denied surgery even if Romero had not filed grievances. See Rauser, 241 F.3d at 333-34 (stating that "once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest"). As noted above, Dr. Gehrmann, the orthopedic specialist who would have performed the surgery, indicated that non-operative treatment was preferable. Romero himself stated at his deposition that he did not object when told that the plan was to strengthen his knee through physical therapy before deciding whether to perform surgery. After Romero received physical therapy and obtained the hinged knee brace, his range of motion "improved drastically." Under these circumstances, and despite Dr. Ahsan's statements tying the surgery decision to the grievances, we conclude that any reasonable factfinder would be compelled to find that this constellation of events meant that Romero would not have surgery at this time regardless of any statements made by Dr. Ahsan. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (discussing "same decision defense").

But we will vacate the District Court's entry of summary judgment on the retaliation claim, as it pertains to the delay in providing the hinged knee brace. The

_____

because Romero "received ongoing medical treatment that was consistent with the recommendations of treating orthopedists," a reasonable jury could not find that a person of ordinary firmness in Romero's position who was denied surgery would have been deterred from an exercise of his constitutional rights.

10

District Court held that "Romero has introduced no evidence of any link between the delay and any intention by [Dr.] Ahsan to retaliate for grievance filings." This conclusion ignores portions of the summary judgment record that, as discussed above, suggest that Dr. Ashan deliberately disregarded Romero's need for the hinged knee brace. Indeed, Romero alleged that Dr. Ahsan delayed providing the hinged knee brace because he filed grievances against Dr. Ahsan. Comp'l, ¶ 37. Moreover, those grievances – which were filed on January 6, 2012, January 13, 2012, and February 16, 2012 – generally coincided with the period during which the hinged knee brace had been prescribed but not provided. See Watson, 834 F.3d 417, 424 (3d Cir. 2016) (stating that an inmate "can establish the third element of a prima facie case of retaliation with evidence of … an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action"). Dr. Ahsan alleged that he had no knowledge of any grievance filed against him by Romero. But disputed questions of material fact are not resolved on summary judgment; rather, the court must view all of the facts in the record in the light most favorable to the non-moving party and rule, as a matter of law, based on those facts. See Doe v. Indian River Sch. Dist., 653 F.3d 256, 275 n.7 (3d Cir. 2011). Applying that standard, we conclude that the District Court erred in entering summary judgment on Romero's retaliation claim concerning the hinged knee brace.

VI.

For the foregoing reasons, we will affirm the District Court's judgment in part and vacate in part and remand for further proceedings. Specifically, we will affirm the

11

District Court's rejection of Romero's Eighth Amendment medical care claim and his First Amendment retaliation claim concerning the denial of surgery. But we will vacate its disposition of the First and Eighth Amendment claims as they relate to the delay in providing the hinged knee brace.[5]

---

[5] Dr. Ahsan's Motion to Seal Supplemental Appendix, Volume II, which contains Romero's medical records, is granted, and that Appendix is sealed for 25 years.