**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2156
_____

BRAY JIBRIL MURRAY,
Appellant

v.

SGT. SMITHBOWER; CO STONER; ELLENBERGER; ROSSMAN; SUPT.
FERGUSON; SALAMON; BECKER-BACHIK; MAJOR GRAHAM; WIGGINS;
DUPONT

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-17-cv-00127)
District Judge:  Honorable John E. Jones, III

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 2, 2023
Before:  KRAUSE, PHIPPS, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 22, 2023)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Plaintiff-Appellant Bray Murray appeals the District Court's adverse judgment in this pro se civil rights action against correctional officers at State Correctional Institution – Benner Township. For the reasons that follow, we will affirm.

I.

On January 22, 2016, Murray lodged a grievance against Officer Myers (who is not a defendant in the present action), alleging that he had conducted a pat-down search that violated the Prison Rape Elimination Act (PREA). Six weeks later, the events underlying the pertinent action occurred.[1] According to Murray, on March 1, 2016, Sergeant Smithbower yelled at him for banging on a locked door, calling him a "PREA rat" and a "grievance filing cry baby." See ECF No. 99-3 at 2. Murray filed a grievance against Sergeant Smithbower and Officer Stoner that same day. Id.

The next day (March 2), Murray was out of his cell making a phone call. See ECF No. 99-2 at 50. After finishing the call, Murray asked Officer Stoner why other inmates were not also out of their cells. Id. While he was talking to Officer Stoner, Sergeant Smithbower came over and asked Murray why he was still out of his cell. Id. at 52. When Murray asked what he meant, Sergeant Smithbower exploded, id., and berated him for filing a litany of grievances against prison officials and for filing the PREA complaint against Officer Myers. See ECF No. 99-2 at 121, ¶ 19 (sworn inmate declaration stating

_____

[1] The parties vigorously disputed the details of the ensuing altercation. Because we must view all facts in the light most favorable to Murray and draw all reasonable inferences in his favor, see Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020), we primarily focus on Murray's version of events.

2

that "Sgt. Smithbower . . . threaten[ed] Mr. Murray and cuss[ed] him out about filing grievances, PREA complaints, etc."). Murray initially walked to his cell, but then changed course to retrieve a Scrabble board he had left on a table. See ECF No. 99-2 at 53-54. Sergeant Smithbower continued yelling at Murray, threatened to place him in the RHU where he could "file all the grievance and PREA-complaints he want[ed]," ECF No. 99-3 at 75, ¶ 14, then followed through on that threat. Within minutes, several officers arrived and escorted Murray to the RHU. Id. at ¶¶ 14-16; see also ECF No. 99-2 at 53-54. According to the prison officials, Murray ignored six orders to return to his cell, stated that if he was going to the RHU, he would "make it worth it," and aggressively approached the officers saying, "I've got something for both of you f******." ECF No. 92-15 at ¶¶ 26-29.

While packing Murray's cell for his RHU transfer, Officer Stoner discovered Murray was in possession of several unauthorized items.[2] Thereafter, Sergeant Smithbower issued Murray a misconduct for, among other things, refusal to obey an order, possession of unauthorized items (i.e., contraband), and threatening an employee with bodily harm. Following a hearing, Examiner Ellenberger found Murray guilty of the offenses set forth in the misconduct, and sanctioned him to 135 days in the RHU.

As noted above, Murray filed a civil-rights complaint. The District Court partially granted the prison officials' motion to dismiss on several claims but denied the motion as

---

[2] Among other things, those items included a second razor, several pieces of stripped wire, one altered auxiliary cord, and one hand-made elastic bag.

to the retaliation claim against Sergeant Smithbower, Correctional Officer Stoner, and

Hearing Examiner Ellenberger. After discovery, the District Court granted the prison

officials' motion for summary judgment. Murray timely filed a motion for

reconsideration under Fed. R. Civ. P. 59(e), which the District Court denied. Murray

timely appealed from that denial order.[3]

## II.

The District Court properly granted summary judgment in favor of the prison

officials on Murray's retaliation claims. "A prisoner alleging that prison officials have

retaliated against him for exercising his constitutional rights must prove that: 1) the

conduct in which he was engaged was constitutionally protected; 2) he suffered 'adverse

action' at the hands of prison officials; and 3) his constitutionally protected conduct was a

substantial or motivating factor in the decision to discipline him." Carter v. McGrady,

292 F.3d 152, 157-58 (3d Cir. 2002). If a prisoner makes out this prima facie case, the

---

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Murray's appeal from the denial of his timely post-judgment motion "brings up the underlying judgment for review," we review the District Court's order denying Murray's motion for reconsideration and the underlying dismissal and summary judgment orders. See McAlister v. Sentry Ins. Co., 958 F.2d 550, 552-53 (3d Cir. 1992). We exercise plenary review over a District Court's order granting a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), see St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp., 967 F.3d 295, 299 (3d Cir. 2020), and over a District Court's order granting summary judgment, see Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is warranted if defendants show "there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review for an abuse of discretion the District Court's order denying Murray's motion for reconsideration. See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999).

burden shifts to the prison officials to show that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001). "[W]e evaluate . . . 'the quantum of evidence' of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." Watson v. Rozum, 834 F.3d 417, 426 (3d Cir. 2016) (quoting Carter, 292 F.3d at 159). Furthermore, we have noted that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." Id. at 425.

We agree with the District Court that Murray established a prima facie retaliation claim against Sergeant Smithbower.[4] Murray engaged in constitutionally protected activity by filing a PREA complaint and Sergeant Smithbower took an adverse action by

---

[4] On this record, it is not entirely clear what, if any, adverse action Officer Stoner imposed on Murray. See Watson, 834 F.3d at 422-23 (an adverse action must be imposed "at the hands of prison officials" and must be "more than *de minimis*") (quotations omitted). As to the March 2 incident, it was Sergeant Smithbower who berated Murray and issued the misconduct. The only evidence presented as to Officer Stoner's retaliatory conduct stemmed from the March 1 incident. According to Murray, Officer Stoner had cursed at him for banging on a prison door and told Murray that he could file a grievance. See ECF No. 99-2 at 47. Furthermore, Murray stated that Officer Stoner had not referred to the PREA complaint when reprimanding him. Id. This isolated incident where Officer Stoner cursed at Murray appears to be insufficiently adverse to support a retaliation claim. See generally Hayes v. Dahlke, 976 F.3d 259, 274 (2d Cir. 2020) (prison officials' vague threats directed at inmates ordinarily do not amount to constitutional violations). In any event, even if Murray had established a prima facie retaliation claim, Officer Stoner can avail himself of the same-decision defense for essentially the same reasons as Sergeant Smithbower.

issuing a misconduct. Id. at 422-23. Six weeks had elapsed since Murray filed the PREA complaint. The temporal proximity, when considered in conjunction with the evidence of Sergeant Smithbower's specific references to Murray's PREA complaint, establishes a causal nexus between the protected activity and the adverse action. See Watson, 834 F.3d at 424 ("[W]here the temporal proximity is not so close as to be unduly suggestive, the appropriate test is timing plus other evidence.") (citations and internal quotations omitted).

Sergeant Smithbower, however, had legitimate reasons to issue the misconduct. The undisputed evidence shows that Murray did disobey an order: he acknowledges that he was told to return to his cell and instead left to retrieve his Scrabble board. See ECF No. 99-2 at 53. Similarly, as to the offense for possession of unauthorized items, Murray admitted that some of the confiscated property was considered contraband. Id. at 61-63. Moreover, unlike the prisoner in Watson, Murray has not presented evidence that showed other inmates were not sanctioned for similar items or otherwise undermined the officers' stated reasons. Cf. Watson, 834 F.3d at 426. And, as to the offense for threatening an employee with bodily harm, based on a video of the incident and Sergeant Smithbower's written report documenting his version of events, see ECF No. 92-4 at 2, the Hearing Examiner credited the prison officials' claim that Murray had threatened them as the incident escalated. Id. at 8. On this record, there is no genuine issue of material fact that Sergeant Smithbower's issuance of the misconduct was reasonably related to legitimate

penological interests and that Murray would have been disciplined regardless of his grievance-filing activities. See Watson, 834 F.3d at 426.

Turning to the retaliation claim against Hearing Examiner Ellenberger, summary judgment in his favor was proper, too. In adjudicating the misconduct, Hearing Examiner Ellenberger reviewed the video footage of the incident at Murray's request; considered Murray's written report setting forth his account of the incident; and considered Sergeant Smithbower's account of the March 2 events. Hearing Examiner Ellenberger credited Sergeant Smithbower's version over Murray's; determined that the video footage corroborated the prison official's account; and found Murray guilty of the offenses set forth in the misconduct. See ECF No. 92-4 at 8. No reasonable juror could conclude that Hearing Examiner Ellenberger's misconduct ruling was based on anything other than Murray's violation of prison regulations. See Carter, 292 F.3d at 159.

Murray also contended that Hearing Examiner Ellenberger violated his due process rights by barring testimony from Murray and other inmates at the hearing; the District Court dismissed this claim at the Rule 12(b)(6) stage.[5] Murray primarily contests

---

[5] On appeal, Murray contends that the District Court failed to adjudicate his due process claims against Hearing Examiner Ellenberger. See C.A. No. 12 at 26. Meanwhile, appellees contend that Murray forfeited any claim on appeal challenging the District Court's disposition of the due process claim against Hearing Examiner Ellenberger. See C.A. No. 15 at 21 n.4. However, the District Court did address Murray's due process claim by dismissing it for failure to state a claim for relief. See ECF No. 31 at 10-12. And, on appeal, not only did Murray challenge the District Court's wholesale failure to address his due process claim; he also "assum[ed] that [the] claim[] w[as] properly disposed of in the court below," C.A. No. 12 at 28, and emphasized that his due process claim had merit. It is therefore proper for us to address this claim on the merits.

7

Hearing Examiner Ellenberger's decision to remove him from the hearing and to preclude inmate testimony after Murray had behaved inappropriately at the hearing. A prisoner has a right to procedural due process when he is deprived of a legally cognizable liberty interest; such a deprivation occurs when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Murray was sanctioned to 135 days in disciplinary segregation. This is not an "atypical and significant" hardship. See Smith v. Mensinger, 293 F.3d 653-54 (3d Cir. 2002) (seven months of disciplinary confinement did not violate a protected liberty interest). He was also sanctioned with the loss of his prison job, but he does not have an interest in that job to trigger due process protections. See James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989); see generally Burns v. Pa. Dep't of Corr., 642 F.3d 163, 171 (3d Cir. 2011) (explaining that "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest"). These claims were thus properly dismissed.

Finally, we discern no abuse of discretion in the District Court's ruling denying Murray's motion for reconsideration. Murray seems to argue that the District Court clearly erred in crediting Hearing Examiner Ellenberger's version of the March 2 incident over his (Murray's) version without independently reviewing the video footage, which was not admitted in the District Court. See C.A. No. 12 at 31; Quinteros, 176 F.3d at 677 ("[A] judgment may be altered or amended if the party seeking reconsideration

8

shows . . . the need to correct a clear error of law or fact or to prevent a manifest injustice.").  However, it was not necessary for the District Court to view the video footage to conclude that, in light of the evidence the officers presented, no reasonable fact finder could conclude that the quantum of evidence failed to support the charges.  See generally Watson, 834 F.3d at 426.[6]

For these reasons, we will affirm the District Court's judgment.

---

[6] Murray may also contend that the video footage should have been admitted to the District Court.  See C.A. No. 12 at 25, 31.  But Murray did not request the video evidence in discovery or argue that its nonproduction prevented disposition of the summary-judgment motions.  See Fed. R. Civ. P. 56(d); Bradley v. United States, 299 F.3d 197, 207 (3d Cir. 2002).  To the extent that he raised that issue – for the first time – in his motion for reconsideration, see ECF No. 107 at 3-4, this was not a proper basis for reconsideration.  See Banister v. Davis, 140 S. Ct. 1698, 1703 (2020) (Rule 59(e) is not a mechanism to raise "new arguments or evidence that the moving party could have raised before the decision issued.").