**William J. BENSON, Plaintiff-Appellant,**

**v.**

**William J. SCOTT and Herbert Caplan, Defendants-Appellees.**

**No. 83–1040.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1984.

Decided May 9, 1984.

Rehearing Denied July 2, 1984.

**1182**

Andrew B. Spiegel, Chicago, Ill., for plaintiff-appellant.

Imelda Terrazino, Asst. Atty. Gen., Chicago, Ill., for defendants-appellees.

1. The author acknowledges the substantial assistance of Judge Swygert to this opinion re-

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.[1]

The appellant, William J. Benson, initiated this action under 42 U.S.C. § 1983 in the district court alleging that William J. Scott, former Illinois Attorney General, and Herbert Caplan, former Illinois First Assistant Attorney General, violated Benson's rights under the First and Fourteenth Amendments. The district court entered summary judgment for the defendants, finding that they were entitled to qualified immunity from liability for their actions. We affirm the district court's finding of immunity with respect to Benson's due process claim. However, we disagree with the district court that the defendants are immune from suit on Benson's First Amendment claim. Accordingly, we reverse the judgment of the district court on that claim, and remand the case for further proceedings.

I.

Benson was employed by the Illinois Department of Revenue ("Department") from 1971 until 1976. On November 1, 1974, Benson entered into a one-year written employment contract with the Department to "undertake projects requiring personal and technical services as assigned by the Department of Revenue concerning pending investigations." The contract was terminable at the will of either party upon written notice, and provided that Benson was to be paid $750 per month. The contract further stated: "It is expressly agreed that for liability insurance purposes only, William Benson will be considered an employee rather than an independent contractor." A similar contract was entered commencing November 1, 1975, and terminating June 30, 1976. Benson was terminated from his employment on June 24, 1976.

Pursuant to his employment contract, Benson was assigned to assist in the en-

flected in Section I and portions of Section II, B.

forcement of the Illinois Cigarette Tax Act, 1981 Ill.Rev.Stat. ch. 120, §§ 453.1–.67, against persons purchasing cigarettes in Indiana and bringing them into Illinois. Beginning in March 1975, eight civil rights actions were filed in federal district court concerning the Department's enforcement of the Act. Benson was named as a defendant in four of those suits.

Initially, the Attorney General's office represented all of the defendants in the civil rights actions. On September 2, 1976, the Attorney General's office sent letters to the civil rights defendants informing them that the office was withdrawing appearances in all of the actions for everyone except the Attorney General because of conflicts of interest. The letter instructed the defendants: "You should immediately make arrangements to obtain your personal counsel at your own expense and substitute appearances before the hearing dates." On October 1, the Attorney General formally withdrew his appearances for all defendants except himself. Thereafter, the Department assumed the cost of substitute representation for all Department defendants except Benson.

Benson was without counsel for approximately one year. On October 3, 1977, counsel, at the direction of and paid for by the insurance company, appeared on Benson's behalf in the four actions in which he was a defendant. On October 19, 1977, Benson engaged private counsel to represent him in the actions.

On December 3, 1977, the Illinois Representation and Indemnification of State Employees Act ("Indemnification Act"), 1981 Ill.Rev.Stat. ch. 127, §§ 1301–02, became effective.[2] The Indemnification Act provides for representation by the Attorney General for employees of the state sued for acts or omissions committed during the course of their employment. It also provides that in the event the Attorney General must withdraw because of a conflict of interest, the state will reimburse the employee for the costs incurred in obtaining his or her own counsel. The statute expressly excludes independent contractors from its coverage.

On October 28, 1977, Benson requested the Attorney General's office to provide him with representation in the civil rights actions pursuant to the Indemnification Act. On February 22, 1978, defendant Herbert Caplan, responding by letter to Benson's request, stated:

Your letter requesting representation pursuant to [the Indemnification Act] has been reviewed. We are informed that your relationship with the Illinois Department of Revenue was pursuant to contract.... [I]t appears that you were not an employee within the definition of section 1(b) of the act and would not be entitled to its provisions.

Beginning in December, 1978, the state liability insurer assumed the costs of Benson's privately-retained counsel. On March 9, 1981, the claims against Benson were settled and dismissed with prejudice by the

**2.** The act provides:

Representation and indemnification of State employees. (a) In the event that any civil proceeding is commenced against any State employee, alleging the deprivation of a civil or constitutional right and arising out of any act or omission occurring within the scope of the employee's State employment, the Attorney General shall, upon timely and appropriate notice to him by such employee, appear on behalf of such employee and defend the action .... (b) In the event that the Attorney General determines that so appearing and defending an employee either (1) involves an actual or potential conflict of interest, or (2) that the act or omission that gave rise to the claim was not within the scope of the employ-

ee's State employment or was intentional, willful or wanton misconduct, the Attorney General shall decline in writing to appear or defend or shall promptly take appropriate action to withdraw as attorney for such employee. Upon receipt of such declination or upon such withdrawal by the Attorney General on the basis of an actual or potential conflict of interest, the State employee may employ his own attorney to appear and defend, in which event the State shall pay the employee's court costs, litigation expenses and attorney's fees to the extent approved by the Attorney General as reasonable, as they are incurred.

An employee is defined as "any ... employee of the State ... but does not mean an independent contractor except as provided in this Section."

court. The settlement did not involve any payment by Benson. Benson did, however, incur the expenses of his counsel from October 19, 1977 to December, 1978.

Benson filed this action on November 24, 1981, against defendants Scott and Caplan. The complaint alleges that the defendants refused to reimburse Benson for his legal expenses in retaliation for Benson's dissemination to the news media and law enforcement agencies of information and evidence concerning Department officials' selective enforcement of the Cigarette Tax Act and improprieties in state court proceedings. The complaint further alleges that the denial of reimbursement violated, after 1977, the Indemnification Act, and was contrary to an established state custom and practice of the Attorney General's office prior to 1977 of representing employees in civil rights actions. The custom was alleged to include allowing state agencies to engage private counsel at state expense when the Attorney General did not appear. Benson sought damages under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights.

The defendants filed a motion to dismiss, interposing the defense of qualified immunity. The motion was converted into one for summary judgment, and was granted. The court held that the defendants were entitled to qualified immunity from suit for their refusal to reimburse Benson for his legal expenses as their actions were objectively reasonable under the Illinois Indemnification Act. The court further held, recognizing that it did not need to reach the issue, that Benson's due process rights were not violated because state law remedies were available which satisfied the due process clause.

## II.

### A. Due Process Claim

Benson claims that the grant of summary judgment on his due process claim was erroneous because a material issue of disputed fact remained; that is, whether Benson was an employee or an independent contractor. Benson reasons that so long as his employment status remains disputed, his right to the state benefit also remains disputed, and no decision can be made about whether the defendants' denial of that right was objectively reasonable for purposes of qualified immunity.[3]

■ The usual analysis of a due process claim proceeds sequentially. First, one determines, as Benson would have us require the district court do here, whether a protected property interest exists at all. If such an interest is found, one determines what procedures must be followed before the government may take action adversely affecting that interest. See, e.g., Devine v. Cleland, 616 F.2d 1080 (9th Cir.1980); Larry v. Lawler, 605 F.2d 954 (7th Cir.1978). In this case we may assume, given the discussion of the issue by the district court, that state employees have a right to be represented by the state in civil actions against them arising out of their employment. However, finding a protected interest in substitute representation will not end the inquiry, for Benson's claim is that his procedural rights were violated. Since the defendants have interposed a defense of qualified immunity, we must ask whether the Attorney General, in making the determination that Benson was not qualified to receive benefits under the statute or custom of the state, violated clearly established procedures of which a reasonable person should have been aware. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ As the Supreme Court has recognized, " 'due process' has never been, and perhaps can never be, precisely defined." Lassiter v. Dept. of Soc. Services of Durham Cty., 452 U.S. 18, 25, 101 S.Ct. 2153,

---

**3.** When the defendants raised the defense of qualified immunity, the district court stayed discovery pending resolution of the motion. Benson contends that the stay was erroneous. In Harlow, however, the Court concluded that discovery should not be allowed until the threshold issue of immunity is resolved. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982).

2158, 68 L.Ed.2d 640 (1981). While the requirements of due process have been settled by the case law for a variety of situations, *see, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (pretermination hearing required before *de facto* tenured teacher may be fired); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (hearing required before welfare benefits may be terminated), the process that is due in any given case varies according to the factual circumstances of the case and the nature of the interests involved. *See Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Here, the Attorney General was asked to determine whether Benson qualified for state-provided representation under a statute which the parties concede codifies prior state practice. Accordingly, he contacted the Department of Revenue, which informed him that Benson was employed as an independent contractor. Since the statute by its express terms denies representation to independent contractors, the Attorney General notified Benson that his office was precluded from providing such representation. Perhaps the Attorney General should have used more elaborate procedures in making this determination, but it is not clear even today that the Constitution required him to do so. Since the law establishing which procedures are constitutionally-mandated is uncertain or unclear, the Attorney General is entitled to qualified immunity from Benson's claim that his right to procedural due process has been violated. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### B. *First Amendment Claim*

The district court also found that the defendants were entitled to qualified immunity from Benson's First Amendment claim. Benson alleged that the defendants had refused to provide him with substitute representation, or to reimburse him for his legal expenses, in retaliation for his exercise of First Amendment rights. The district court held that the defendants' conduct in refusing to reimburse Benson was objectively reasonable, because the statute upon which Benson premised his claim to reimbursement excludes independent contractors.

■ As we noted above, *Harlow* dictates that a claim of qualified immunity by an executive official must be sustained if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 102 S.Ct. at 2738. In determining whether the actions alleged by Benson violate clearly established law, however, the relevant legal framework is not the Illinois Indemnification Act, as the defendants and the district court believed. Benson's claim is that the Attorney General violated his rights under the First Amendment. This claim does not require Benson to show that he had a right to reimbursement under the Act, for even where there is no right to a valuable government benefit, the denial of that benefit may not be premised on an employee's exercise of his First Amendment rights. *See Healy v. James,* 408 U.S. 169, 180–81, 92 S.Ct. 2338, 2345–46, 33 L.Ed.2d 266 (1972); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *Hostrop v. Board of Junior College District No. 515,* 471 F.2d 488, 491–93 (7th Cir.), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1973). The right of employees to be free from retaliation for their exercise of First Amendment rights has been clear since at least 1968, when the Supreme Court decided *Pickering v. Board of Education, supra.* The defendants cannot claim that the law was unclear in 1977, when the events at issue in this case allegedly occurred.

■ However, the defendants attempt to avoid the impact of the cases cited above by analogizing this case to *Egger v. Phillips,* 710 F.2d 292 (7th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). In *Egger,* this court held that Phillips, an FBI official, was immune from liability for transferring Egger, an employ-

ee who had complained to FBI supervisors about a co-worker. The court found that a reasonable person in Phillips' position could not have been expected to know at the time he made the transfer that he was violating Egger's First Amendment rights. *Egger* is clearly distinguishable. First, most of the doctrinal uncertainty which led the court to conclude that the law was unclear in *Egger* centered on the fact that Egger was a public employee whose criticisms were made in the workplace. The court noted that "until the Supreme Court's decision in *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), it was an open question whether public employees' on-the-job expressions were entitled to constitutional protection." 710 F.2d at 315. In the instant case, however, Benson alleges that it was his criticisms of the Department of Revenue to the news media and other law enforcement agencies which led to the retaliation. Second, Benson's employment with the Department ended on June 24, 1976. The Attorney General did not withdraw representation until October of that year, and Benson's request for substitute representation was not denied until 1978. Thus, many of the uncertainties found in *Egger* which resulted from the continuing concern that the state as employer should be able, in certain circumstances, to regulate the public utterances of its employees are not present here. Benson was no longer a state employee at the time of the alleged violation.

We conclude that at least on the present record, the defendants are not entitled to qualified immunity with respect to Benson's First Amendment claim. Of course, we express no opinion on whether Benson will be able to prove the allegations of his complaint. And we note that the defendants are still free to establish that they would have reached the same decision not to reimburse Benson even in the absence of protected conduct. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

### III.

For the reasons expressed in this opinion, the judgment of the district court on Benson's due process claim is affirmed. The judgment on Benson's First Amendment claim is reversed, and the case is remanded to the district court for further proceedings. Each party shall bear his own costs on appeal.

HARLINGTON WOOD, Jr., Circuit Judge, concurring and dissenting.

Although I gladly join Judge Eschbach in Part A of his opinion affirming the grant of summary judgment in behalf of the defendants on plaintiff's due process claim, I respectfully dissent from Part B reversing the grant of summary judgment in behalf of defendants on plaintiff's First Amendment claim.

Some additional overview may be helpful. This case is a minor remnant of class action litigation begun in 1974 against the Illinois Department of Revenue concerning the enforcement of the Illinois Cigarette Tax Act against persons bringing cigarettes into the State of Illinois. Benson, who was not named in that suit, was under contract to the Department to provide certain technical services in enforcement of the Act. That contract expressly provided that Benson was to be an "independent contractor" with the exception that he would be considered a state employee for liability purposes only, so that he would be covered by the Department's insurance.

In 1975, four separate civil rights actions were filed in the district court concerning the Act's enforcement. Benson was named as a defendant along with others in the Department. There were also four other related civil rights actions pending in which Benson was not involved. During the course of all this litigation, Benson filed an affidavit critical of the Department. Three days later his contract was terminated. His employment contract provided that it was terminable on written notice by either party.

The Illinois Attorney General initially represented all defendants, including Ben-

son, in all eight civil rights suits. However, it soon appeared to the Attorney General, not surprisingly, that there was no way to harmonize the defenses of his various state clients. All defendants were advised to retain their own counsel and the Attorney General withdrew as counsel in all the cases except in behalf of himself as a separate defendant.

In addition to the eight civil rights cases already pending, Benson added two more of his own: one against the Director of the Department and others; and a second against the Governor and others. Benson complained that due process entitled him to a hearing before his technical services contract was terminated, and secondly, that he was entitled to another hearing before the Attorney General could withdraw as his counsel. Benson no longer contests the validity of his employment contract termination.

In the four civil rights suits in which Benson was a defendant, the state insurance carrier provided Benson with counsel without expense to him after the Attorney General withdrew. Benson nevertheless later also hired two private attorneys for those cases.

In 1977, before all this was over, new state legislation was passed providing for representation of state employees in certain civil cases, but not for independent contractors. Citing this Act, Benson again requested that the Attorney General represent him in the civil rights actions in which he was a defendant, claiming that the other state defendants had been reimbursed for their private counsel. The Attorney General again declined to represent Benson since he viewed Benson as an independent contractor and therefore as not entitled to that representation. Benson then tried in one of his own civil rights actions in which he was plaintiff to prevent the Attorney General from authorizing use of private counsel for the state defendants he had named. Former Judge Alfred Kirkland ruled that the Attorney General had properly declined representation due to a conflict of interest

and had not exceeded his powers in authorizing private counsel.

Later, Judge McMillen approved settlement of the four civil rights cases in which Benson had been a defendant, all without any financial liability falling on Benson.

In Benson's own two consolidated civil rights cases, former Judge John Crowley entered partial summary judgment against Benson because Benson failed to show a property interest in continued employment, and further on the ground that Benson had no cause of action against the Department for withdrawal of state-supplied legal counsel. On Benson's motion for reconsideration, Judge Aspen, now favored with those cases, ruled as Judge Crowley had before him, but noted that Benson did have counsel supplied by the state's insurance carrier. Benson then sought to add as defendants, Scott, then Attorney General, and Caplan, his assistant. That was denied.

Now we finally get to this separate civil rights lawsuit which Benson next filed naming Scott and Caplan as defendants, and charging due process and First Amendment violations in his lack of state representation. Judge Roszkowski first drew this lawsuit, but after some additional activity, the case was reassigned to Judge Hart, whose summary judgment decision we are now reviewing.

In Judge Hart's summary judgment proceeding, the facts of Benson's actual representation were clarified. Benson was supplied counsel by the state insurance carrier without expense to him in the four civil rights actions in which he was a defendant and which were finally settled without expense to Benson. The insurance carrier had for a time, in addition, also partially paid the fees of Benson's private attorneys. There was a period when the expenses of Benson's private attorneys were not paid by the insurance carrier, but that was simply because the insurance carrier was providing Benson with other counsel without expense to Benson. What the case really amounted to was that Benson claimed he was entitled to be represented by two sets of attorneys at state expense.

Judge Hart held against Benson, granting defendants' motion for summary judgment on the basis that the state defendants enjoyed qualified immunity and that Benson had not been deprived of property rights without due process.

Now, after ten years of litigation, twelve separate lawsuits (one of which Benson was a witness in, four of which he was a defendant in, and three of which he started on his own), and more than five district court judges later, it is doubtful that anyone remembers or cares that what originally started all this was cigarettes. Those cases were all long ago disposed of, but Benson has managed to perpetuate this litigation remnant. Benson emerged from the original litigation with no liability and no need to have personally expended anything for his legal representation. Now he has succeeded in involving us in peripheral constitutional issues about which we cannot agree. The mere brief recitation of this litigation story suggests to me that, as a practical matter, much of it was unnecessary. I would affirm on the basis of Judge Hart's memorandum opinion in less time than it takes to recount Benson's stubborn continuing quarrel with everybody.

As the majority correctly points out, to overcome a claim of qualified immunity by an executive official, the official's conduct must "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Benson was labeled an independent contractor in the contract he signed, so he appeared not to be entitled to state representation before or after the new Act was passed. State employees are not hired by a special contract as independent contractors who may be fired, with or without cause; they are just hired. The Attorney General took the logical, reasonable position that Benson was an independent contractor and, as such, was excluded from representation. Nothing suggests otherwise.

In spite of these circumstances, Benson claims that the defendants' refusal to provide substitute representation or to reimburse him for his legal expenses are in retaliation for exercising his First Amendment rights. However, counsel was furnished to Benson without expense by the state's insurance carrier, and the private counsel expense Benson assumed for only a short time was of his own unnecessary doing. Although I agree with the majority that to premise the denial of a valuable government benefit on a person's exercise of his First Amendment rights violates the First Amendment even if no independent legal entitlement to that benefit exists, I believe that the defendants' refusal to reimburse Benson for the fees of his privately-retained attorneys was objectively reasonable under *Harlow*. If, after the Attorney General withdrew from his joint representation of all defendants in the eight civil rights cases, the state had initially agreed to pay Benson for substitute legal representation but then refused to continue after Benson criticized the Department, Benson might have a First Amendment claim. But such is not the case. I believe the state officials had qualified immunity and were entitled to it. I consider Benson's alleged whistle-blowing to be an irrelevant non-First Amendment issue in these circumstances.

There is some question about disposing of all of this by summary judgment, but the material facts are not disputed by anything except legal arguments and collateral allegations that would require us to search unnecessarily behind the technical services contract and to assume the Attorney General was wrong about his ethical decision and his informed view of the circumstances upon which he reasonably acted.

In *Harlow*, 102 S.Ct. at 2737 (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)), the Supreme Court reaffirmed that: "In identifying qualified immunity as the best attainable accommodation of competing values ... we relied on the assumption that this standard would permit '[i]nsubstantial lawsuits [to] be quickly terminated.'" I would recognize the qualified immunity of the

state defendants and bring all this to a long overdue close. As it is, the next issue will be Benson's claim for fees in this appeal followed by more proceedings before yet another district court judge and another appeal by one of the parties back to this court. I would support Judge Hart in his disposition of this case.

SWYGERT, Senior Circuit Judge.

I concur with the opinion of this court that the defendants are not entitled to qualified immunity with respect to Benson's first amendment claim. I dissent, however, from the court's opinion on Benson's due process claim. I conclude that the latter claim involves material questions of fact that cannot be determined in a summary judgment proceeding, *see* Fed.R.Civ.P. 56(c), and would remand the claim to the district court.

The majority assumes, as do I, that state employees have a right to be represented by the state in civil actions brought against them arising out of their employment. *Ante* at 1184. Thus, Benson's procedural due process claim involves the question of what process was due him before the defendants could reject his request for state-provided representation. *See Larry v. Lawler*, 605 F.2d 954 (7th Cir.1978). Under *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982), the defendants were required to provide only those procedural safeguards that were objectively reasonable in light of established law and policy. I agree with the majority that there is no law establishing the precise process to be afforded before denying an application for state-provided representation. I also agree that the process due in any given case depends on the circumstances of the case and the nature of the interests involved. *See ante* at 1185–1186. I disagree, however, that the absence of clearly established procedures renders "reasonable" any procedures afforded Benson by the defendants.

At least since *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the law has been clearly established

that once a protected property interest is established, the state cannot deprive a person of that interest without affording some procedural safeguards. Those safeguards include, at a minimum, notice and an opportunity to be heard. "It is axiomatic that before the government can deprive a person of a protected interest in property, the due process guarantee of the Constitution requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Gallagher & Ascher Co. v. Simon*, 687 F.2d 1067, 1076 (7th Cir.1982) (quoting *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978)). In the absence of established law defining the precise procedures to be followed in a given instance, precision is not required of government officials. This is not to say, however, that officials are not therefore required to afford a claimant any procedures. They are still required to provide some minimal notice and hearing procedures.

I conclude that it cannot be determined on the present record whether the procedures afforded Benson met the minimal standards of due process and would remand the issue to the district court. The record shows only that Benson sent a letter to the Attorney General's office requesting representation in the civil rights actions pending against him and that Benson was sent a letter from defendant Caplan denying the request. The record does not indicate what if any type of review was made of Benson's application or what procedures if any were available to Benson to contest an unfavorable decision. Thus, it is impossible to determine whether the procedures used to determine that Benson was not entitled to representation were reasonably calculated to afford Benson notice and an opportunity to be heard.

In addition to a procedural due process claim, I find that Benson states a substantive due process claim that raises material questions of fact. Benson alleges that irre-

spective of the procedures used by the defendants, the decision to deny him state-provided representation was arbitrary and contrary to established law and practice. This court has recognized that arbitrary state action depriving a person of life, liberty, or property may constitute a substantive due process violation. *See United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 445 n. 28 (7th Cir.1982); *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1, 3–4 (7th Cir.1974). Under *Harlow, supra*, the question before this court is whether the defendants' decision to deny Benson's request for state-provided representation, on the basis of a letter from the Department of Revenue declaring that Benson was an independent contractor, was objectively reasonable.

The Indemnification Act requires the State to provide representation or indemnification to its employees in accordance with the terms of the statute. The definition of "employee" expressly excludes independent contractors. 1981 Ill.Rev.Stat. ch. 127, § 1301. Whether a worker is classified as an employee or an independent contractor is a critical question in many employment-related claims. *See, e.g., Alexander v. Industrial Commission*, 72 Ill.2d 444, 448, 21 Ill.Dec. 342, 343, 381 N.E.2d 669, 670 (1978) (only employees entitled to award under Workmen's Compensation Act); *Byrne v. Stern*, 103 Ill.App.3d 601, 604–05, 59 Ill.Dec. 316, 318–19, 431 N.E.2d 1073, 1075–76 (1981) (employer is liable under Liquor Control Act only for conduct of employees); *Dumas v. Lloyd*, 6 Ill.App.3d 1026, 1030, 286 N.E.2d 566, 569 (1972) (employer is liable only for negligent acts of employees). The law in Illinois is clearly established that the characterization of the worker by the employer does not determine whether the worker is an employee or an independent contractor. *See Bauer v. Industrial Commission*, 51 Ill.2d 169, 170–72, 282 N.E.2d 448, 449–51 (1972); *Manahan v. Daily News-Tribune*, 50 Ill.App.3d 9, 14, 8 Ill.Dec. 659, 663, 365 N.E.2d 1045, 1049 (1977). Rather, the courts will examine a variety of factors, the most important of which is the worker's right to control the

manner of doing work. Other factors to be considered include whether the worker is compensated on a time basis or by the job, whether the employer maintains the right to discharge the worker, the nature of the worker's occupation in terms of the degree of skill required and its relationship to the regular business of the employer, and whether the employer furnishes the worker with materials or equipment. *See Alexander v. Industrial Commission, supra*, 72 Ill.2d at 449, 21 Ill.Dec. at 343, 381 N.E.2d at 670.

Benson alleges, among other things, that he performed his duties pursuant to the direction, control, and instructions of Department supervisors; his conduct was supervised on a day-to-day basis by his superiors; he performed the same duties as a Security and Fraud Investigator, which has been a Civil Service position since 1969; he was issued state equipment by his superiors, including an investigator's badge, a radio, handcuffs, state license plates, FBI training materials, and an Employee's Handbook; he was authorized by the Department to carry a service revolver while performing his official duties and received training by the Department in the use of firearms. In addition, Benson's contract with the Department provided for compensation on a time basis and authorized the Department to discharge Benson at will. These allegations are sufficient to raise a factual question whether Benson was an employee or an independent contractor. This question cannot be resolved on the basis of a single sentence contained in the employment contract. *Cf. Bauer v. Industrial Commission, supra*, 51 Ill.2d at 170–72, 282 N.E.2d at 449–51 (examining the control and authority exercised by employer to determine worker's status despite statement in contract that worker was an independent contractor).

More importantly for the issue on appeal in the instant case, Benson's allegations raise a material question whether an attorney general, who is presumed to know the law of the state that he represents, could have reasonably decided that Benson was

an independent contractor. The answer to this question depends, in part, on facts not in the record such as what information concerning the terms of Benson's employment was available to the defendants. Thus, I find that summary judgment was improper on this claim as well.[*]

For the foregoing reasons, I dissent from Part II.A. of the court's opinion.

---

[*] Having concluded that Benson's due process claim survives summary judgment on the issue of defendants' qualified immunity, I note my disagreement with the district court's finding that Benson did not state a due process claim under section 1983 because alternative remedies provided him all the process that was due. *See Benson v. Scott,* No. 81–C–6591, Mem.Op. at 10–12 (N.D.Ill. Dec. 29, 1982). Post-deprivation remedies, such as those cited by the district court, satisfy the due process clause only if pre-deprivation process is impracticable. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Vail v. Board of Education,* 706 F.2d 1435, 1440–41 (7th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 66, 78 L.Ed.2d 81 (1983); *Bonner v. Coughlin,* 517 F.2d 1311, 1319 & n. 24 (7th Cir.1975), *modified en banc,* 545 F.2d 565 (7th Cir.1976), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978); *Begg v. Moffitt,* 555 F.Supp. 1344, 1353–65 (N.D.Ill.1983). There was no showing that pre-deprivation process was impracticable in the instant matter. Moreover, the remedies cited by the district court are too vague and speculative to supplant Benson's section 1983 remedy. *See Logan v. Zimmerman Brush Co., supra,* 455 U.S. at 436–37, 102 S.Ct. at 1158–59; *Evans v. City of Chicago,* 689 F.2d 1286, 1298 (7th Cir.1982).