PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3346
_____

KELLY CONARD,

Appellant

v.

PENNSYLVANIA STATE POLICE;
PENNSYLVANIA STATE POLICE HUMAN
RESOURCES;
SGT. JOSEPH TRIPP; SGT. DENNIS HILE
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1-15-cv-00351)
Honorable Sylvia H. Rambo, District Judge

_____

Argued June 13, 2018

BEFORE:  CHAGARES, GREENBERG, and FUENTES,
Circuit Judges

(Filed: August 28, 2018)
_____

Nicholas J. Boyle
Eric J. Hamilton (argued)
Williams & Connolly
725 12th Street, N.W.
Washington, DC 20005

   Attorneys for Appellant

Josh Shapiro
Attorney General of Pennsylvania
John G. Knorr
Chief Deputy Attorney General
J. Bart DeLone
Howard G. Hopkirk (argued)
Kenneth L. Joel
Office of Attorney General
of Pennsylvania
15th Floor
Strawberry Square
Harrisburg, PA 17120

   Attorneys for Appellee
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I.  INTRODUCTION

Plaintiff Kelly Conard appeals from the July 12, 2016 order of dismissal of a civil rights action that she brought under 42 U.S.C. § 1983 against her former employer, the Pennsylvania State Police, and her former State Police supervisors, Sergeants Joseph Tripp and Dennis Hile.  The District Court held that the bulk of Conard's claims were barred because they had been adjudicated in a prior action which she initiated after she unsuccessfully sought reemployment by the State Police after she voluntarily had resigned.  The Court also dismissed her separate claim that defendants retaliated against her for having filed that prior action by giving her negative employment references as it held that the complaint failed to state a claim upon which relief could be granted.  For the reasons set forth below, we will reverse the order dismissing Conard's First Amendment retaliation claim.[1]

## II.  FACTUAL and PROCEDURAL BACKGROUND

We draw the following facts from Conard's amended complaint which we assume to be true in our consideration of the order granting defendants' motion to dismiss her retaliation complaint.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965 (2007).  The Pennsylvania State Police employed Conard for seventeen years as a 911 dispatcher.

---

[1] She raised the Fourteenth Amendment as well as the First Amendment but the Fourteenth Amendment claim adds nothing to her case so we do not discuss that Amendment further.

Conard voluntarily ended her employment in 2002 when she moved to Texas to accompany her husband, who was in that state on an active military deployment. When she left her employment in 2002, there was documentary evidence showing that she had a record of "commendable and outstanding personnel evaluations." App. 107, ¶ 9. Nevertheless, the record shows that defendants Tripp and Hile, Conard's direct supervisors before she left her State Police employment, and Conard had had employment-related disagreements. The substance of these disagreements was at issue in Conard's earlier lawsuit but they are of limited significance on this appeal because she can assert a First Amendment retaliation claim to bring this action even though her first action was not successful.[2]

Conard returned to Pennsylvania from Texas in 2004 and reapplied for her 911 dispatcher position. Following an initial

_____

[2] Conard's complaint describes her earlier disagreements with the individual defendants as follows. On one occasion, Conard went "over Defendant Hile's head" to request emergency backup officers for an incident involving gunfire, which in Conard's view required extra assistance. In her view, Hile "refus[ed] to take appropriate actions" and, according to Conard, her actions in going over his head to secure the backup "probably saved a life." App. 107, ¶ 11. Conard's disagreement with Sergeant Tripp related to her request that she be allowed to take a sick day when she was involved in an automobile accident which Tripp denied. Conard alleges that Tripp's denial was unreasonable and she claims that Tripp subsequently restricted her use of sick leave even though Conard never had requested excessive leave.

4

interview, the State Police told Conard that she would be hired subject to a background check. But the result of the background check ultimately led the State Police not to make her an offer of employment. Conard alleges that she was told that information from her former supervisors, Hile and Tripp, caused the State Police to reject her application. Id.

Conard believed that the denial of her 2004 application for employment was discriminatory and was the result of Hile's and Tripp's retaliation against her because of disagreements between Conard and them during her previous employment with the State Police. Consequently, she filed an administrative charge of discrimination with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission alleging discrimination based on gender.[3] Then on July 24, 2006, Conard filed her initial civil rights action in the district court against the Pennsylvania State Police, Hile and Tripp charging that they discriminated and retaliated against her because of the previous employment disputes. The court referred the matter to a magistrate judge who filed a report and recommendation that the court should dismiss Conard's action. The court accepted the recommendation and dismissed the action.[4] Conard appealed but we affirmed in an unpublished opinion. Conard v. Pennsylvania State Police, 360 F. App'x 337 (3d Cir. 2010).

---

[3] She does not raise a gender discrimination issue on this appeal.

[4] We need not go into detail about the basis for the court's decision.

Conard alleges that in the years following the filing of her initial action and up to the time that the record was closed in this case, she has been unable to obtain employment. She claims that defendants have given prospective employers "negative, false, and defamatory" statements in response to reference requests. App. 112, ¶ 33, 35. She further asserts that the individual defendants told Conard's prospective employers "that [Conard] had attendance issues, absence issues, and had filed a law suit against them and that [she] was not eligible to return" to the State Police. App. 114, ¶ 40. Conard claims that these statements do not accurately reflect her exemplary record as a State Police employee and that defendants knowingly made these false statements in retaliation for Conard having filed the prior federal lawsuit. Conard also alleges that on at least one occasion, in response to an employment reference request, a representative of the State Police falsely represented that the State Police never had employed Conard.

Conard filed this second action pro se in 2015, alleging that defendants retaliated against her in violation of her First Amendment rights for having brought her initial action. Defendants in response filed a motion to dismiss. The District Court once again referred the matter to a magistrate judge who filed a report and recommendation that the Court grant defendants' motion to dismiss. The Court adopted that recommendation and dismissed the action for failure to state a claim upon which relief could be granted.[5] Conard unsuccessfully moved for reconsideration, and then appealed.

_____

[5] The magistrate judge recommended that Conard be directed to file a more definite statement but the District Court did not adopt that portion of the recommendation. The definitive

On this appeal, Conard moved for in forma pauperis status, which we granted. In our order we instructed the parties to brief two issues, in addition to any others they wished to raise, relating to the proper standard applicable to this First Amendment action:

> (1) whether the public-employment framework applies to a former employee under the circumstances of this case, cf. Williams v. Town of Greenburgh, 535 F.3d 71, 76-77 (2d Cir. 2008); Benson v. Scott, 734 F.2d 1181, 1186 (7th Cir. 1984); and (2) whether a plaintiff must plead adverse action 'of a particularly virulent character,' McLaughlin v. Watson, 271 F.3d 566, 573 (3d Cir. 2001); see also Mirabella v. Villard, 853 F.3d 641, 651 (3d Cir. 2017), when claiming retaliation in the form of a public employer's negative employment references.

App. 148.

## III. JURISDICTION and STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1334. We have jurisdiction to review the dismissal of plaintiff's complaint under 28 U.S.C. § 1291. We exercise de novo review over the dismissal of Conard's complaint under Federal Rule of Civil Procedure 12(b)(6). See Schmidt v. Skolas, 770 F.3d 241, 248 (2014). In this motion to dismiss

---

statement matter is not an issue on this appeal.

7

context, we "are required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) (citations omitted). The parties in their briefs have addressed the issues that we set forth in our order granting her in forma pauperis status.

## IV. DISCUSSION

We begin by clarifying the applicable First Amendment legal standard in two respects. First, we conclude that the framework for First Amendment claims brought by government employees against their employers does not apply to Conard's retaliation claim, because the speech which Conard alleges triggered the retaliation against her—filing administrative complaints[6] and a lawsuit against her former employer— occurred after she had left her State Police employment. The public-employment framework exists to accommodate the competing interests of public employees to speak freely and the government's need to regulate the speech of its own employees. See Garcetti v. Ceballos, 547 U.S. 410, 417-18, 126 S. Ct. 1951, 1957-58 (2006) (citing Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 88 S. Ct. 1731 (1968)). But once Conard left her State Police employment, it did not have a protectable interest in controlling Conard's speech. Therefore, the public-employment framework does not apply to her claim. See Williams v. Town of Greenburgh, 535 F.3d 71, 77 (2d Cir.

---

[6] The administrative complaints are a secondary matter so we do not mention them further.

8

2008) (declining to apply public-employment framework to retaliation claim brought by former government employee).[7]

Second, in the context of this action, Conard was not required to plead that defendants engaged in retaliatory conduct "of a particularly virulent character," a standard applicable to retaliation claims where the retaliatory conduct involves speech by a public employee defendant. See McLaughlin v. Watson, 271 F.3d 566, 573 (3d Cir. 2001). Of course, we recognize that absent particularly virulent conduct, an official's speech ordinarily does not amount to a retaliatory act for First Amendment purposes. Id. at 573. But where a defendant public official's alleged retaliation takes the form of the official's own speech, we have noted that the official's First Amendment rights countervailing to the employee's rights become implicated, and this leads us to apply a less demanding but more specific test to survive a motion to dismiss. Id. We look instead to the defendant's action to determine whether in that action "there was 'a threat, coercion, or intimidation, intimating that

[7] Defendants have argued that Conard's claims should be evaluated under the public-employment framework because she is attempting to re-litigate claims that arose while she was an employee and were the subject of her earlier lawsuit. However, in her briefs and at oral argument before this Court, Conard explicitly has disclaimed any attempt to revive those earlier claims. Accordingly, we base our conclusion that the public-employment framework does not apply on our understanding that Conard has abandoned any claim that would involve speech she made while employed by the State Police. We do not consider the question of whether the public-employment framework could be applied in post-employment litigation involving earlier speech during public employment.

9

punishment, sanction, or adverse regulatory action [would] follow.'" Mirabella v. Villard, 853 F.3d 641, 651 (3d Cir. 2017) (quoting McLaughlin, 271 F.3d at 573).

Moreover, courts have not applied the heightened virulent character standard in cases where, as here, the official's conduct relates only to a private matter such as the plaintiff's job performance as a former employee. Thus, in Suarez Corp. Industries v. McGraw, 202 F.3d 676 (4th Cir. 2000), the case on which we relied in McLaughlin, the Court of Appeals for the Fourth Circuit anticipated that the heightened standard might not apply where a defendant's statements "concerned private information about an individual." 202 F.3d at 689. Furthermore, that court has declined to apply the McLaughlin virulent character test to cases where the public official's "retaliatory speech discloses private or damaging information about the plaintiff." Blankenship v. Manchin, 471 F.3d 523, 528 n.4 (4th Cir. 2006); see also Balt. Sun Co. v. Ehrlich, 437 F.3d 410, 420 (4th Cir. 2006).

We have suggested that the virulent character test is implicated only where the public official's speech touches on a matter of public concern. See Muni. Revenue Servs., Inc. v. McBlain, 347 F. App'x 817, 824 (3d Cir. 2009) (non-precedential). At this point in the proceedings, accepting as true Conard's allegations that defendants repeatedly misrepresented her employment history and job performance, applying the virulent character test would require us to recognize that defendants had a First Amendment interest in their allegedly untruthful statements that Conard could overcome only by scaling a high barrier. But because this case does not involve a matter of public concern, we decline to interpose the virulent character test on this appeal.

10

Having clarified the applicable standard, we now apply the standard we adopt to Conard's claim that defendants' allegedly false statements to her prospective employers were made to retaliate against her for having brought her earlier judicial complaint. The District Court concluded that Conard had not adequately pled a causal link between her earlier lawsuit and the defendants' statements because of the long temporal gap between those events. We conclude, however, that dismissal for lack of causation was premature and that Conard should be afforded the opportunity to develop proof of causation through discovery. While significant time passed between Conard's earlier complaint and the alleged retaliation, there is no bright line rule for the time that may pass between protected speech and what constitutes actionable retaliation.

To plead a plausible First Amendment retaliation claim, Conard was required to allege three elements: (1) "[she engaged in] constitutionally protected conduct, (2) [there was] retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) [there was] a causal link between the constitutionally protected conduct and the retaliatory action." Mirabella, 853 F.3d at 649 (3d Cir. 2017) (quoting Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006)). There is no doubt that Conard's initiation of the first action was constitutionally protected conduct so we pass to the other elements. In considering the causal link element on the motion to dismiss, we conclude that Conard plausibly has pled that there was a causal link between her conduct, i.e. initiating the first action, and defendants' allegedly retaliatory action necessary to support her claim. See Miller v. Mitchell, 598 F.3d 139, 153 (3d Cir. 2010). A plaintiff sufficiently pleads her case with respect to causation if she

11

pleads that her "constitutionally protected conduct was a substantial or motivating factor" for the retaliatory conduct. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). While "unusually suggestive" timing can provide evidence of causation, causation also can be shown "from the evidence gleaned from the record as a whole." Id. at 424. Conard can attempt to show retaliation through a "pattern of antagonism" in addition to the timing of events. Id. at 422.

The magistrate judge in this second case in recommending that the District Court make a finding that Conard had not adequately pled causation, relied on a group of cases for the proposition that causation may be implied by temporal proximity only if the alleged retaliation follows the protected conduct within a number of days, rather than weeks or months. However, those cases largely involved summary judgment proceedings where the plaintiff had had an opportunity to marshal evidence and had chosen to rely on circumstantial evidence to prove causation based on the timing of events.

By contrast, at the motion to dismiss stage, the District Court was obliged to accept Conard's factual allegations as true and to draw reasonable inferences regarding causation in her favor. After all, her allegations do not lack plausibility. In general, there is not a bright line rule limiting the length of time that may pass between a plaintiff's protected speech and an actionable retaliatory act by a defendant. See Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003) (cautioning that "a specified time period cannot be a mechanically applied criterion"). While obviously we take no position on the truth or falsity of Conard's claims, we are constrained to reverse the

12

dismissal of the retaliation claim because, to the extent that the Court found that causation could not be proven because of the passage of time between Conard's protected conduct, i.e., bringing her initial action, and the retaliation, that conclusion was premature at the motion to dismiss stage.

In addition, the District Court held that negative references cannot constitute retaliation, and in doing so relied on a single Title VII case, Chinoy v. Pa. State Univ., No. 11-cv-1263, 2013 WL 6631536, at *9 (M.D. Pa. Dec. 17, 2013). However, the question of whether a negative reference would be enough to satisfy the "deterrence" element of Conard's claim is debatable. See Brescia v. Sia, No. 07-cv-8054, 2008 WL 1944010, at *4 (S.D.N.Y. Apr. 30, 2008) ("We have no doubt that the prospect of a negative employment reference, which has the obvious potential to impede the search for a new job, would deter a person of ordinary firmness from exercising his constitutional rights.").[8] We have held that "First Amendment retaliation claims are always individually actionable, even when relatively minor" and that the deterrence threshold to chill a plaintiff from exercising her First Amendment rights by reason of the defendant's conduct for such a claim is "very low."

---

[8] We think it appropriate to point out that if a retaliation action can be brought against an employer or former employer for giving a negative reference the employer may be reluctant to give any reference at all at the request of a later potential employer but instead will adopt a "no response" policy on receiving a reference request. Therefore, courts should scrutinize retaliation cases based on negative references with great care, particularly if the employer moves for summary judgment in such an action.

O'Connor v. City of Newark, 440 F.3d 125, 127-28 (3d Cir. 2006). Based on this standard, Conard adequately alleged retaliatory conduct by defendants that satisfies the deterrence prong of her First Amendment claim as set forth in Mirabella. Therefore, her retaliation complaint satisfies all three elements of the Mirabella test and the Court should not have dismissed it on a motion to dismiss and we will remand it for further proceedings.

## V. CONCLUSION

For the reasons above, we will reverse the District Court's July 12, 2016 order granting defendants' motion to dismiss and will remand the case to that Court for further proceedings on Conard's First Amendment retaliation claim. On the remand, Conard should have the opportunity to conduct appropriate discovery and to present evidence establishing the causal connection between her protected First Amendment conduct and the alleged retaliation by defendants. Of course, defendants also should have the right to discovery on the remand. Finally, we thank Conard's attorneys on this appeal for having represented her in a fine way on a pro bono basis.