**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3644
_____

KELLY CONARD,
                                        Appellant

v.

PENNSYLVANIA STATE POLICE; PSP HUMAN RESOURCES;
SGT. JOSEPH TRIPP; DENNIS HILE

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-15-cv-00351)
District Judge: Honorable Sylvia H. Rambo

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on October 4, 2021

Before: GREENAWAY, JR., KRAUSE, and BIBAS, <u>Circuit Judges</u>

(Opinion file:  January 6, 2022)

_____

---

OPINION[*]

---

PER CURIAM

Pro se appellant Kelly Conard appeals from the District Court's order granting the defendant's motion for summary judgment. For the following reasons, we will affirm the District Court's judgment.

I.

As we write primarily for the parties, who are familiar with the facts, we will discuss the details only as they are relevant to our analysis. Conard worked for the Pennsylvania State Police from 1985 until 2002, when she retired to join her then-husband who was assigned military service in Texas. In 2004, she applied to rejoin the State Police, but was not hired in part because her former supervisors Dennis Hile and Joseph Tripp provided negative feedback regarding Conard's dependability and previous use of sick leave. In November 2005 Conard filed a charge of gender discrimination with the EEOC and the Pennsylvania Human Relations Commission. In July 2006, she filed a federal lawsuit against Hile, Tripp, and the State Police. The District Court ultimately granted the defendants' motion for summary judgment in that suit, and we affirmed in an unpublished opinion. Conard v. Pa. State Police, 360 Fed. Appx. 337, 338 (3d Cir. 2010) (per curiam).

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In 2015, Conard filed this second action, alleging in part that the same defendants retaliated against her in violation of her First Amendment rights for having brought the first suit. The District Court granted the defendants' motion to dismiss for failure to state a claim on which relief could be granted. On appeal, we clarified the applicable First Amendment legal standard and reversed as to Conard's First Amendment retaliation claim. Conard v. Pa. State Police, 902 F.3d 178, 182-85 (3d Cir. 2018). After discovery, the defendants moved for summary judgment. Conard conceded summary judgment as to Hile and the State Police but argued that the summary judgment record supported a claim that Tripp retaliated against Conard by providing negative employment references.[1]

A Magistrate Judge recommended that the defendants' motion for summary judgment be denied as to Tripp. But the District Court disagreed and granted the defendants' motion in its entirety. Conard appeals.

## II.

We have jurisdiction under 28 U.S.C. §1291. We exercise plenary review over a grant of summary judgment, applying the same standard that the District Court applies. Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 141 (3d Cir. 2017). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury

---

[1] While Conard is proceeding pro se on appeal, she was represented by one attorney for the beginning of the discovery process and, after she asked the first attorney to withdraw, a second attorney for the conclusion of discovery and summary judgment briefing.

could return a verdict for the nonmoving party.'" Razak v. Uber Techs., Inc., 951 F.3d 137, 144 (3d Cir. 2020) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. (internal quotation marks omitted). We "must view the facts and evidence presented … in the light most favorable to the nonmoving party." Id.

## III.

First, we briefly address the scope of the evidentiary record. The defendants accompanied their motion for summary judgment and supporting brief with a statement of undisputed material facts citing deposition testimony and declarations. Conard, through her then-counsel, responded in a brief citing several attached exhibits.[2] On appeal, Conard, now proceeding pro se, submitted more than 200 pages of additional exhibits not cited by either party in the summary judgment briefing before the District Court. While Conard submitted some of these exhibits to the District Court in 2015 when responding to the defendants' motion to dismiss, many others were never submitted to the District Court and some even post-date the District Court's judgment. We cannot consider documents that were not part of the record before the District Court. See In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts, 913 F.2d 89, 96 (3d Cir. 1990) ("This Court

---

[2] The District Court noted that Conard's submission failed to comply with Middle District of Pennsylvania Local Rule 56.1 by failing to provide a separate counter-statement of material facts. The District Court still conducted a full analysis to determine whether granting summary judgment was appropriate. See Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613 (3d Cir. 2018).

has said on numerous occasions that it cannot consider material on appeal that is outside of the district court record.").

To prevail on her First Amendment retaliation claim, Conard had to show that: "(1) she engaged in constitutionally protected conduct, (2) there was retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) there was a causal link between the constitutionally protected conduct and the retaliatory action." Conard, 902 F.3d at 183 (alterations omitted) (quoting Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017)). There is no dispute that Conard's initiation of the first lawsuit was constitutionally protected conduct. Tripp argues that no genuine dispute as to material facts exists concerning the latter two elements, and that he is entitled to judgment as a matter of law on both points. We focus on the third element, causation.

To establish causation, Conard needed to show that her "'constitutionally protected conduct was a substantial or motivating factor' for the retaliatory conduct." Conard, 902 F.3d at 184 (quoting Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016)). This can be done through "evidence of: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Watson, 834 F.3d at 424. If Conard succeeded, Tripp would then have the opportunity to respond by showing that the allegedly retaliatory action would have been taken anyway, independently of any retaliatory animus. Mirabella, 853 F.3d at 651-52; see Hartman v. Moore, 547 U.S. 250, 260 (2006) ("[A]ction colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.").

5

Conard alleged that Tripp provided negative references to prospective employers as a result of her first lawsuit. She emphasized the alleged contrast between the generally positive performance reviews prepared by Tripp and Hile during her final years with the State Police and Tripp's later criticisms. But Tripp does not contend, and the record does not support, that this contrast emerged only as retaliation for Conard's first lawsuit. Indeed, Conard's first lawsuit was based in part on this same alleged contrast. She alleged that Tripp helped block her rehiring by inaccurately and unfairly criticizing her prior service. To show retaliation, Conard thus must show that her constitutionally protected activity motivated some escalation in Tripp's conduct beyond this preexisting animosity. See Feldman v. L. Enf't Assocs. Corp., 752 F.3d 339, 349 (4th Cir. 2014) (affirming order granting summary judgment where plaintiff "offered no evidence that his [protected] conduct changed the bitter status quo in any way").

Conard identifies this escalation as Tripp's provision of negative employment references. Under State Police policy, any reference requests were supposed to be processed through an automated verification system, not answered by former supervisors like Tripp. Importantly, Conard's theory of causation requires that Tripp provided negative feedback for references purposes after her protected conduct. If a prospective employer received negative feedback from the State Police Human Resources Department based on Tripp's previous comments during the review of her 2004 application, that would not be evidence of retaliation by Tripp.[3]

_____

[3] Newly solicited feedback from Tripp could constitute retaliation, even if relayed to a potential employer indirectly. But the record contains no evidence that any reference

In opposing summary judgment, Conard relied in part on the alleged statements by Tripp to Joseph DePietro to support her theory of causation. Pl.'s Br. in Opp'n 12, ECF No. 86. DePietro is a former Pennsylvania state trooper who now works as a private investigator. Conard hired him to serve the defendants with this lawsuit and to investigate negative references being given to potential employers. DePietro arranged to meet Tripp and Hile in the parking lot of a grocery store to serve the lawsuit. According to DePietro, Tripp was hostile, commented that "this is round two," and asked if DePietro had ever met Conard.[4] Conard later asked DePietro to consider her for a position with his business. He declined, citing Tripp's comments. Although Tripp's comments may have affected Conard's chances of employment with DePietro, Tripp had no reason to believe that DePietro was a potential employer or that his comments to DePietro would have any effect on Conard. For these reasons, we agree with the District Court that these comments cannot be reasonably understood as a negative employment reference, or indeed any form of retaliatory action.

Conard also relied on statements that she claimed Tripp made to a Ms. O'Connor. DePietro reported that he interviewed O'Connor in late 2015. O'Connor ran a traveling

---

provided by the State Police Department of Human Resources involved new feedback from Tripp. Notably, Tripp's negative views might also be accessible to potential employers through the publicly available records of Conard's first lawsuit. See Pl.'s Unsworn Declaration 13, ECF No. 19 (alleging that a potential employer found one of the judicial opinions on the internet).

[4] In a report Conard submitted to the District Court in response to the defendants' motion to dismiss, DePietro represented that he engaged in conversation with Tripp and asked him "what this was all about," leading to the cited comments. Pl.'s Ex. Part I 17, ECF No. 20.

retail business, and Conard applied for employment. According to DePietro, O'Connor checked Conard's references and received a negative reference from Tripp. DePietro claims that he had O'Connor sign a notarized statement which he provided to Conard. But DePietro reports that Conard has since misplaced that document.[5]

We agree with the District Court that DePietro's account of O'Connor's statements is hearsay evidence that could not be considered. "The rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are capable of being admissible at trial." Fraternal Order of Police, Lodge 1 v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016) (alterations omitted) (quoting Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)). The proponent of such evidence must explain the admissible form that is anticipated. Id. Conard has provided no evidence that O'Connor would not be available for trial and has identified no hearsay exception that would permit DePietro to testify as to O'Connor's alleged statement.

Absent the statements to DePietro and O'Connor, the record contains no evidence of direct statements specifically by Tripp to potential employers after the first lawsuit. Conard's contention that Tripp provided negative references in that time period is thus circumstantial and relies on speculative inferences from evidence referring generally to negative references or references provided by the State Police. Even assuming that a jury could reasonably find that Tripp did in fact provide such references, other evidence,

---

[5] Neither Conard nor DePietro have explained why they have not attempted to replace the lost statement or provided any further information concerning Ms. O'Connor, such as her full name, any contact information, or the name of her business.

8

including reports by professional reference check company Allison & Taylor, produces a causation problem. Conard retained Allison & Taylor four times, in 2005, 2011, 2013, and 2014, to check her references with the State Police. According to the firm's reports, Tripp provided a negative reference to them regarding Conard in April 2005. In the later years, he declined to provide a reference, citing either State Police policy or his personal preference.[6] To the extent that the negative reference predates Conard's protected activity, it fatally undermines her theory of causation. The defendants highlighted this point before the District Court. Defs.' Br. in Supp. of Summ. J. 12, ECF No. 80; Defs.' Br. in Supp. of Defs.' Partial Objs. 6, 9, ECF No. 90. Conard, through her then-counsel, did not respond to this argument, and the District Court relied on it. Mem. 12, 14-15, ECF No. 91.

On appeal, Conard argues for the first time that Tripp could have retaliated in April 2005 because he would have been aware that she threatened to file a lawsuit in her communications with the State Police.[7] She relies on an alleged statement she made by phone to Jason Wiley with the State Police Human Resources Department and a letter she sent in February 2005 to the State Police Department of Human Resources requesting that the denial of her application be reconsidered. The letter contains an indication of a courtesy

---

[6] Unbeknownst to Tripp, he was not communicating with a genuine prospective employer.

[7] Conard has not previously identified any threat to file a lawsuit as protected conduct, but that position is at minimum reasonable. See Anderson v. Davila, 125 F.3d 148, 162–63 (3d Cir. 1997) (explaining that allowing harassment of one who announced an intention to file a lawsuit would render the right to petition useless); Watson, 834 F.3d at 422-23 (declining to draw any distinction for retaliation purposes between declaring an intent to file a grievance and actually filing).

copy to an attorney. See App. III 69, 3d Cir. ECF No. 13. But the letter was not submitted to the District Court at any stage of this litigation, and we cannot consider it.[8] See In re Capital Cities, 913 F.2d at 96. Conard's alleged statement to Wiley is reflected in her deposition testimony, which the defendants submitted with their statement of undisputed material facts. See ECF No. 81-1 at 36-37, 51-52. Conard did not cite this testimony or any portion of her deposition testimony in her opposition to the defendants' motion for summary judgment. See Fed. R. Civ. P. 56(c)(1)(A).

"It is well-established that arguments raised for the first time on appeal are not properly preserved for appellate review." Simko v. U.S. Steel Corp., 992 F.3d 198, 205 (3d Cir. 2021). Conard did not argue to the District Court that Tripp was aware of any protected conduct in April 2005, so she has forfeited that argument. See id. We may consider forfeited arguments only under truly exceptional circumstances, and Conard has not identified such circumstances here.[9] Id. at 205-06. On the record and arguments before the District Court, a jury could not reasonably rule for Conard on causation.[10]

---

[8] Conard mentioned the letter in her deposition testimony but did not mention copying an attorney. See ECF No. 81-1 at 36-37.

[9] This is especially true given her failure to comply with Local Rule 56.1 before the District Court.

[10] Even if we considered Conard's new argument, her theory of causation would require a jury to determine that Tripp actually became aware of the threatened lawsuit, would not have responded to Allison & Taylor in 2005 absent that threat, and continued to provide negative references to prospective employers years later, notwithstanding the contrary evidence of the later Allison & Taylor reports. But we need not decide whether a jury could reasonably reach those conclusions from the summary judgment record.

## IV.

Accordingly, we will affirm the judgment of the District Court.[11]

---

[11] Conard filed a perfunctory motion to, inter alia, file an overlength brief without limitation. On February 26, 2021, The Clerk denied the motion as presented, but granted Conard permission to file a brief not exceeding 15,600 words. She then filed another, more-developed motion, which has been referred to us, essentially seeking reconsideration of that decision because her draft had surpassed 25,000 words. She ultimately filed a brief of 17,744 words. We grant Conard's motion to reconsider the word limit imposed by the Clerk's Order of February 26, 2021, in that we accept and have considered her overlength brief as filed.